Sixth Division
June 11, 2010

No. 1-08-2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| | ) | |
| | ) | No. 90 CR 11979-80, |
| | ) | 90 CR 11982-83, 90 CR |
| | ) | 11986-91, and 90 CR |
| v. | ) | 660648. |
| | ) | |
| TONY ANDERSON, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Defendant, Tony Anderson, appeals from the circuit court's denial of his petition for leave to file a successive postconviction petition pursuant to section 122-1(f) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2004)). He contends that the circuit court erred when it found that he failed to establish either a freestanding claim of actual innocence or the requisite "cause and prejudice," which would permit him to proceed with his successive petition. For the reasons that follow, we disagree.

I. BACKGROUND

We begin by noting that the complex procedural history of this case. On April 18, 1990, defendant was arrested on automobile theft charges and taken to Area 2 headquarters, where he was questioned by Detectives Michael McDermott and Tony Maslanka. There, defendant made a

1

statement implicating himself in numerous offenses committed in March and April 1990. As a result, defendant was subsequently indicted on over 100 charges in 13 different cases in Cook County. In case No. 90 CR 11984, defendant proceeded with a bench trial and was found guilty of attempted murder, armed violence and armed robbery and sentenced to 3 concurrent terms of 25 years' imprisonment. In case No. 90 CR 11985, defendant proceeded with a jury trial and was convicted of armed robbery and sentenced to 25 years' imprisonment with the sentence to run concurrent to the sentence imposed in case No. 90 CR 11984. Defendant pleaded guilty to charges in 11 remaining cases, which are the subject of this appeal. These cases include case Nos. 90 CR 11979, 90 CR 11980, 90 CR 11982, 90 CR 11983, 90 CR 11986, 90 CR 11987, 90 CR 11988, 90 CR 11989, 90 CR 11990, 90 CR 11991 and 90 CR 660648.

*Motion to Suppress Confession*

Prior to defendant's guilty pleas, William Heenan, defendant's original trial counsel, moved to suppress defendant's inculpatory statements, alleging that they were the product of police coercion. At a pretrial hearing on that motion, defendant testified that Detectives McDermott and Maslanka physically coerced him into confessing.[1] Specifically, defendant asserted that Detective McDermott placed a gun to his head and threatened that he would "blow [his] damn brains out" if he did not confess. Defendant also averred that Detective Maslanka jabbed him in the chest, rib, and back with his night stick. Although he could not say exactly how

---

[1] We briefly summarize the evidence presented at that pretrial hearing as a detailed account is unnecessary to the resolution of this appeal and is already available in this appellate court's decision in People v. Anderson, 375 Ill. App. 3d 121, 123-24 (2007).

2

many times he was jabbed, defendant estimated it was "over 12 times," because he was crying in pain. Defendant also stated that no one ever advised him of his Miranda rights and that during the interview, he made seven requests for permission to make a telephone call but was denied each time. Both Detectives McDermott and Maslanka denied that any coercion took place and testified that although they repeatedly advised defendant of his Miranda rights he, at no point, requested an attorney or indicated that he wished to cease the interview. After hearing all of the evidence, the circuit court denied defendant's motion to suppress his incriminating statements, finding that they were given "freely and voluntarily without coercion or threat or compulsion of any kind." In doing so, the court found that based on the totality of evidence, defendant "was advised of his rights numerous times" and was "not in anyway threatened or abused." The court also noted that "the evidence we choose to accept *** [is] the testimony of the police officers indicating that he was at no time abused or physically threatened."

*Guilty Pleas*

On August 9, 1991, defendant's newly retained counsel, Thomas Hoffa, represented defendant as he pleaded guilty to charges in the 11 cases, including: one count of first degree murder (in case No. 90 CR 11979), two counts of attempted first degree murder (in case Nos. 90 CR 11983 and 90 CR 11986), eight counts of armed robbery (in case Nos. 90 CR 11780, 90 CR 11987, 90 CR 11988, 90 CR 11989, 90 CR 11990, 90 CR 11991, and 90 CR 660648), and one count of attempted escape (in case No. 90 CR 11982). The State indicated that in exchange for defendant's pleas of guilty to the aforementioned charges, it would recommend a 50-year sentence for first degree murder (in case No. 90 CR 11979); 30-year sentences for attempted first

3

degree murder (in case Nos. 90 CR 11983 and 90 CR 11986); 30-year sentences for armed robbery (in case Nos. 90 CR 11980, 90 CR 11987, 90 CR 11988, 90 CR 11989, 90 CR 11990, 90 CR 119091 and 90 CR 660648); and a 5-year sentence for attempted escape (in case No. 90 CR 11982), with all of those sentences to run concurrently (but consecutively to the sentences imposed in case Nos. 90 CR 11984 and 90 CR 11985, wherein defendant was tried and convicted of other crimes).

The State then made the following factual submissions with respect to each of the aforementioned guilty pleas. With respect to case No. 90 CR 11979, in which defendant pleaded guilty to first degree murder, the State proffered that if the case went to trial the evidence would show that on March 30, 1990, together with another black male, defendant went to an apartment at 7313 South Green Street, in Chicago. When the apartment door was opened by the victim, Leonard Cox, defendant said "Nobody move," and then fired two shots from a .25-caliber handgun at Cox, causing his death. Eyewitnesses who were present during the incident would identify defendant as the shooter in open court. The evidence would further show that when defendant was subsequently arrested on April 18, 1990, the same .25-caliber handgun used in the shooting of Cox was retrieved from his person. On April 19, 1990, defendant was identified as the shooter in a lineup, whereupon, after being advised of his rights, he confessed to participating in the shooting.

In case No. 90 CR 11980, defendant pleaded guilty to three counts of armed robbery. As a factual basis for this plea, the State proffered the following evidence: At about 12:30 p.m., on March 30, 1990, together with an accomplice, defendant approached the victims, Virgette Brandt,

Mattie Cephus and Demetrius Cephus, in front of their apartment at 6215 South Wabash Street in Chicago. Defendant then placed a handgun on Brandt's neck and forced his way into the apartment, whereupon he took approximately $250 and miscellaneous jewelry from the occupants. The victims later identified defendant in a lineup and would identify him in open court if the case proceeded to trial.

In case No. 90 CR 11982, defendant pleaded guilty to attempted escape. The State's proffer established that at about 3:07 a.m., on April 20, 1990, defendant was in custody on pending felony charges. After defendant requested a telephone call, he was moved to a secure area of the police station, whereupon he attempted to escape by "trying to knock down and run past a number of police officers," all of whom would identify defendant in open court.

In case No. 90 CR 11983, defendant pleaded guilty to attempted first degree murder. As a factual basis, the State proffered that at about 2:40 p.m. on April 7, 1990, together with an accomplice, defendant walked into "Pot-O-Gold Liquors" located at 8658 South Ashland Street. Defendant's accomplice walked up to the counter "pretending to make a purchase," and then pulled out a handgun and asked the victim, Jeanette Lazzarotto, to give him money. When the victim refused, a struggle ensued between the two. During the struggle, defendant pulled out his own handgun, approached the victim and shot her in the back of the neck, causing her to be hospitalized for a period of eight days. The witnesses would identify defendant in open court.

In case No. 90 CR 11986, defendant pleaded guilty to attempted first degree murder. As a factual basis for this plea, the State proffered that at about 4:30 p.m. on March 17, 1990, together with an accomplice, defendant approached the victim, Jerome Wright, in an alley located

at 7543 South Ingleside Avenue in Chicago, pulled out a .25-caliber handgun and shot the victim in "the side." The victim attempted to flee but defendant pursued him and shot him once again in the stomach. Defendant then fled the scene of the crime. When defendant was later apprehended, a .25-caliber handgun was recovered from his person. The victim identified defendant in a lineup as the shooter and would do so in open court if the case proceeded to trial.

In case No. 90 CR 11987, defendant pleaded guilty to two counts of armed robbery. As a factual basis for this plea, the State indicated that the following evidence would be introduced at trial against defendant: At approximately 5:20 p.m. on April 8, 1990, together with codefendant Robert Allen, defendant entered a store located at 1358 West 95th Street in Chicago and pretended to make a purchase. Both defendant and Allen then pulled out handguns and approached the two cashiers, Al Chheda and Gaysene Henderson, and while brandishing the handguns demanded money. After taking money from the cash registers, defendant and Allen led the victims to the back room and ordered them to remain there until they left the store. Defendant was subsequently arrested and identified in a lineup by Chheda as one of the robbers. After having been advised of his rights, defendant admitted to his participation in the robbery.

In case No. 90 CR 11988, defendant pleaded guilty to armed robbery. As a factual basis for defendant's plea the State proffered that at about 6 p.m. on March 23, 1990, defendant and an accomplice entered a gas station located at 2928 East 87th Street in Chicago, and while brandishing handguns announced a robbery. Defendant's weapon was a .25-caliber handgun. Defendant then took $200 and some cigarettes from two gas station attendants, Marvin Hill and Rochelle Huerta, before forcing them into a rear room. Upon defendant's arrest, the same

weapon used in the crime was recovered from his person. Both witnesses identified defendant in a lineup and would identify him in open court if the case proceeded to trial.

In case No. 90 CR 11989, defendant pleaded guilty to armed robbery. The State proffered that the evidence would show that at about 4:20 p.m. on March 8, 1990, defendant entered a store located at 1008 East 76th Street, made a purchase, then displayed a .25-caliber handgun and announced a robbery. Defendant pointed his gun at Gloria Honecker, a store employee, cocked the weapon and demanded money. Defendant took $149 and some food stamps and then fled. When defendant was subsequently arrested he was identified in a lineup by several witnesses who were present during the incident and who would identify defendant in open court if the case proceeded to trial. Defendant also confessed to this crime after being advised of his rights.

In case No. 90 CR 11990, defendant pleaded guilty to armed robbery. The State's proffer showed that on April 13, 1990, together with an accomplice, defendant entered a liquor store, displayed a .25-caliber handgun and announced a robbery. Defendant forced the victim, Caroline Byrd, into the bathroom and began to tear her clothes off. When a customer entered the store, defendant and his accomplice were forced to flee, taking with them approximately $400 and "miscellaneous jewelry" from the victim. Defendant was later identified in a lineup by all of the witnesses present during the incident, and after being advised of his rights, he confessed to his involvement in the crime.

In case No. 90 CR 11991, defendant pleaded guilty to two counts of armed robbery. As the factual basis for this plea, the State proffered the following evidence: At about 7:05 p.m., on

April 4, 1990, defendant and an accomplice entered a beauty salon located at 1855 East 87th Street "under the pretext of making a purchase." After about five minutes inside the store, defendant displayed a .25-caliber handgun and announced a robbery. Defendant forced all the patrons to lie down on the ground and then proceeded to take money and jewelry from them. Defendant then placed a gun to the owner's head and ordered her to open the safe from which he took an undisclosed sum. The .25-caliber handgun was recovered on defendant's person upon his arrest. Seven witnesses positively identified defendant and an eighth tentatively identified defendant as the perpetrator. After being advised of his rights, defendant gave a statement admitting his involvement in the robbery.

Finally, in case No. 90 CR 660648, defendant also pleaded guilty to armed robbery. As a factual basis for this plea, the State proffered the following evidence: At about 1:17 p.m., on April 17, 1990, together with an accomplice, defendant entered a Clark gas station located at 1301 West 127th Street in Calumet Park, brandishing a .25-caliber handgun. Defendant led the victims, Randy Stefani and Steven Muranski, to the office, where he handcuffed them to a pipe while his accomplice took money from the cash register and safe. The witnesses later identified defendant in a lineup and would identify him in open court if the case proceeded to trial. Further, after being advised of his rights, defendant confessed to his involvement in this robbery.

Following admonishments by the trial court, and defendant's statement that he had not been threatened or coerced into pleading guilty, defendant waived his right to a jury trial and entered guilty pleas to the aforementioned charges. The circuit court accepted the pleas and sentenced defendant in accordance with the plea agreement.

*Motion to Vacate Guilty Pleas/First Postconviction Petition*

On November 1, 1991, defendant moved to vacate his guilty pleas in each of the foregoing 11 cases, arguing that he did not understand the plea agreement, the nature of the charges, or that the potential sentences could run consecutively. Defendant also argued that his attorney had "coerced" him into pleading guilty by telling him that if he did not do so, he would likely get the death penalty. On December 17, 1991, the circuit court *sua sponte* indicated that it would treat defendant's motion as a postconviction petition because, as a motion, it was untimely as it was filed 30 days after defendant had entered his pleas of guilty. The court then went on to dismiss defendant's postconviction petition, finding that his claims were "spurious and without basis in law and fact." In doing so, the court noted that defendant had been advised "as to each and every case the possible penalties, the nature of the charges, the factual basis for each case," and "at no time indicated any hesitation."

Defendant appealed the circuit court's dismissal of his petition, arguing that it was improperly dismissed without an evidentiary hearing more than 30 days after its filing. The State confessed error. On May 4, 1992, we remanded the cause solely for appointment of counsel and a hearing to determine whether the allegations in defendant's petition were frivolous. On remand, the circuit court ruled that the claims raised in defendant's petition could have been raised on direct appeal and were thus frivolous and patently without merit. Defendant did not appeal this dismissal.

*Second Postconviction Petition*

Instead, on April 28, 2000, defendant filed a single *pro se* postconviction petition

encompassing all 11 cases to which he pleaded guilty (including case Nos. 90 CR 11979, 90 CR 11980, 90 CR 11982, 90 CR 11983, 90 CR 11986, 90 CR 11987, 90 CR 11988, 90 CR 11989, 90 CR 11990, 90 CR 11991 and 90 CR 660648). In that petition, defendant alleged that he had been deprived of effective assistance of counsel when counsel "coerced" him to plead guilty through repeated statements that if he proceeded to trial, he would receive the death penalty. Defendant also argued that counsel was ineffective for failing to file any motions, and for appearing drunk in court on the day of his guilty pleas. On May 16, 2000, the circuit court dismissed defendant's second petition as untimely and frivolous. On March 19, 2002, we upheld the dismissal of defendant's petition, noting that defendant's claims of ineffective assistance of counsel were barred by the doctrine of *res judicata* because "even though they were couched in terms of ineffective assistance of counsel, they [were] identical in substance to such claims raised [and rejected] in defendant's original petition." People v. Anderson, No. 1-00-2338 (2002) (unpublished order pursuant to Supreme Court Rule 23).

*Third Postconviction Petition*

On December 9, 2004, defendant filed his third successive postconviction petition again challenging all 11 of his guilty pleas (including case Nos. 90 CR 11979, 90 CR 11980, 90 CR 11982, 90 CR 11983, 90 CR 11986, 90 CR 11987, 90 CR 11988, 90 CR 11989, 90 CR 11990, 90 CR 11991 and 90 CR 660648). In that petition, defendant alleged that his plea was made as a result of police coercion and that he made his incriminating statement at Area 2 violent crimes as a result of torture inflicted by Area 2 and Area 3 detectives. Defendant specifically identified Detectives McDermott and Maslanka as having coerced a confession from him. According to the

petition, Detective McDermott held a gun to defendant's head and threatened to "blow [his] brains out" if he did not sign a confession. Detective Maslanka then repeatedly jabbed defendant with his nightstick in the back and chest. Defendant stated that as a result of these tactics, he made a statement implicating himself in various crimes, including several of the crimes to which he pleaded guilty.[2]

Also, in his petition, defendant again contended that counsel "coerced" him into pleading guilty to the crimes to which he confessed by telling defendant that if he did not plead guilty he would receive the death penalty. Defendant further argued that in violation of Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), the State failed to disclose to him that Detectives Maslanka and McDermott had been accused of torture by other defendants and that there were numerous instances of similar police abuse at Area 2 and Area 3 under the command of Jon Burge.

On January 4, 2005, the circuit court dismissed defendant's petition, and defendant appealed. Although defendant appealed the dismissal of his motion for leave to file a third postconviction petition in all 11 cases to which he pleaded guilty, he included only indictment number 90 CR 11979 in the caption of that motion and in his notice of appeal. Accordingly, this court found that it had jurisdiction only over indictment No. 90 CR 11979. See People v.

---

[2]As shall be discussed further below, a review of the proffer of the State at defendant's guilty plea hearing reveals that defendant made incriminating confessions only in 6 of the 11 cases he pleaded guilty to, including, case Nos. 90 CR 11979, 90 CR 11987, 90 CR 11989, 90 CR 11990, 90 CR 11991 and 90 CR 660648.

No. 1-08-2024

Anderson, 375 Ill. App. 3d 121, 123 (2007).

After the circuit court ruled on defendant's postconviction petition and while defendant's appeal was pending, on July 2006, the Report of the Special State's Attorney investigating allegations of police misconduct and abuse at Area 2 was completed and released.[3] Defendant sought leave of this court to cite that report as additional authority on appeal. Although we granted defendant's request to cite to that report, in our final order, we concluded that it would be "wrong for us to consider that report for the first time on appeal without it first being attached to defendant's postconviction petition for initial scrutiny and evaluation at the trial court level." Anderson, 375 Ill. App. 3d at 139. We then went on to affirm the summary dismissal of defendant's petition without the benefit of the Report of the Special State's Attorney. See People v. Anderson, 375 Ill. App. 3d 121, 123 (2007), *appeal denied*, 226 Ill. 2d 588 (2007).

*Instant Petition*

On June 6, 2008, defendant filed a *pro se* "Motion for Leave to File Successive Post-Conviction Petition for Cause," encompassing all 11 of his guilty pleas (including case Nos. 90 CR 11979, 90 CR 11980, 90 CR 11982, 90 CR 11983, 90 CR 11986 through 11991 and 90 CR 606048), and attached to that his present successive postconviction petition. The instant petition is defendant's fourth successive petition with respect to case No. 90 CR 11979 and his third successive petition with respect to the remaining 10 guilty plea cases. In this petition, defendant for the first time asserted a claim of actual innocence and alleged that his guilty pleas were made

---

[3]This report was initially ordered by the chief judge of the circuit court criminal division in a written order entered on April 24, 2002, but was not completed until July 2006.

12

as a result of police coercion and ineffective assistance of counsel. Specifically, defendant alleged that: (1) his confession was the product of police coercion; (2) counsel was ineffective for failing to: investigate his allegations of abuse, file a motion to quash arrest and suppress his inculpatory statements, as well as challenge the lineup identifications; (3) the police engaged in unduly suggestive lineup procedures; and (4) defendant's guilty plea was involuntarily made because counsel advised him that he would receive the death penalty if the case went to trial.

As newly discovered evidence supporting his claim, defendant attached the following documents: (1) the July 2006 affidavit of codefendant Robert Allen; (2) defendant's own undated affidavit attesting to the factual allegations in his petition; (3) the 1990 report of the Chicago Police Department's Office of Professional Standards (OPS) regarding police misconduct at Area 2 police station[4]; (4) an excerpt from the 1995 summary report of Gregory Banks' and David

---

[4]We note that the OPS investigation began in 1989, following internal investigation of police misconduct at Area 2. "The first section of the OPS report is known as the Goldston report. It documents the allegations of 50 different suspects concerning misconduct by Area 2 personnel from 1973 to 1986. The allegations included 27 incidents of beatings, 13 incidents where a plastic bag or typewriter cover was placed over a suspect's head, 11 incidents where a firearm was used to threaten or strike a suspect, 9 incidents of electroshock, and 2 hanging incidents. The report concluded that Area 2 police [, headed by commanding officer Jon Burge,] engaged in systematic abuse of suspects during the 13-year period, which included planned torture." People v. Orange, 195 Ill. 2d 437, 445-46 (2001). The second section of the OPS report is the Sanders report, which is an analysis of the Andrew Wilson case. That report found

13

Bates' complaints against Sergeant John Byrne; (5) a September 1998 chart of police misconduct complaints from 1979 to 1996; (6) the Report of the Special State's Attorney, which defendant attempted to cite in his prior appeal in Anderson, 375 Ill. App. 3d at 133, including all of the supplemental OPS memoranda sent to the Special State's Attorney during this investigation summarizing the allegations of police misconduct by the following alleged victims: Cortez Brown (completed on March 30, 2006), Marcus Wiggins (completed on January 11, 2006), Jesse Clemon, Tremain Green, Diyez Owens, and Clinton Welton (completed on January 1, 2006), Michael Peterson (dated May 26, 2005), Travis Richardson (dated May 26, 2005), Terry Harris (dated October 27, 2005) and the defendant (dated October 10, 2005); and (7) an undated "Request For A [Public] Hearing Before the Cook County Board On the Special Prosecutors' Police Torture Investigation and Report" (hereinafter the Request).

On July 19, 2008, the circuit court denied defendant leave to file a successive postconviction petition, holding that defendant had raised the same exact claims in his earlier postconviction petitions and that he failed to present any new material evidence to support these claims which would warrant granting him leave to proceed with a successive petition. Defendant now appeals.

---

that "Burge [himself] actively participated in the 'mistreatment' of Wilson, burned Wilson with a radiator, repeatedly shocked him, and 'engaged [him] in several unjustified physical altercations during which Mr. Wilson was handcuffed and incapable of providing any resistance.' " People v. Patterson, 192 Ill. 2d 93, 141 (2000).

## II. ANALYSIS

On appeal, defendant contends that the circuit court erred when it denied him leave to file his successive postconviction petition because he properly alleged a claim of actual innocence. In the alternative, defendant contends that his motion for leave to file his successive postconviction petition satisfied the prerequisites of the cause-and-prejudice test. For the reasons that follow, we disagree.

We begin by noting the well-established principles regarding successive postconviction proceedings. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2004)) provides a means by which a defendant may challenge his conviction for "substantial deprivation of federal or state constitutional rights." People v. Tenner, 175 Ill. 2d 372, 378 (1997). A postconviction action is a collateral attack on a prior conviction and sentence and " 'is not a substitute for, or an addendum to, direct appeal.' " People v. Simmons, 388 Ill. App. 3d 599, 605, (2009), quoting People v. Kokoraleis, 159 Ill. 2d 325, 328 (1994). Consequently, the Act contemplates the filing of only one postconviction petition, and obtaining leave of court is a condition precedent to filing a successive postconviction petition. Simmons, 388 Ill. App. 3d at 605, citing People v. Brockman, 363 Ill. App. 3d 679, 688-89 (2006); see also 725 ILCS 5/122-1(f) (West 2004) ("[o]nly one petition may be filed by a petitioner under this [a]rticle without leave of the court"); see also People v. DeBerry, 372 Ill. App. 3d 1056, 1060 (2007) ("section 122-1(f) unequivocally requires that a defendant must obtain leave of court before filing a successive petition ***. Section 122-1(f) constitutes a procedural hurdle *** that the legislature has intentionally chosen to impose regarding such petitions" (emphasis in original.))

Pursuant to section 122-1(f) of the Act, leave of court may be granted only if defendant "demonstrates cause for his or her failure to bring the claim in his or her initial post[]conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2004); see also People v. Pitsonbarger, 205 Ill. 2d 444, 458 (2002). To establish cause, defendant must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2004); see also Pitsonbarger, 205 Ill. 2d at 458; DeBerry, 372 Ill. App. 3d at 1060; People v. Morgan, 212 Ill. 2d 148, 153-54 (2004). To establish prejudice, defendant must demonstrate that the error not raised in his initial postconviction proceedings so infected the trial that the resulting conviction violated due process. 725 ILCS 5/122-1(f) (West 2004); see also Pitsonbarger, 205 Ill. 2d at 458; DeBerry, 372 Ill. App. 3d at 1060; Morgan, 212 Ill. 2d at 154.

However, our supreme court has recognized that defendant need not establish cause and prejudice in his section 122-1(f) motion for leave to file a successive petition if he can show a valid freestanding claim of actual innocence. People v. Ortiz, 235 Ill. 2d 319, 330-31 (2009) ("where a defendant sets forth a claim of actual innocence in a successive postconviction petition, the defendant is excused from showing cause and prejudice"), citing Pitsonbarger, 205 Ill. 2d at 459-60, and People v. Brown, 225 Ill. 2d 188, 206 (2007). "To win relief under [this] theory, the evidence adduced by defendant and establishing his actual innocence must first be newly discovered, i.e., it must be evidence that (1) was not available at defendant's original trial and (2) that defendant could not have discovered sooner through diligence." Simmons, 388 Ill. App. 3d at 614, citing Morgan, 212 Ill. 2d at 154. "Moreover, the evidence provided by defendant must

16

also be material and noncumulative, and must be of such conclusive character that it would probably change the result on retrial." Simmons, 388 Ill. App. 3d at 614, citing Morgan, 212 Ill. 2d at 154.

We review the denial of defendant's motion for leave to file a successive postconviction petition *de novo*. People v. LaPointe, 365 Ill. App. 3d 914, 923 (2006), *aff'd,* 227 Ill. 2d 39 (2007).

*Freestanding Claim of Actual Innocence*

In the present case, defendant first contends that he should be afforded an opportunity to present his successive postconviction petition because he is asserting a freestanding claim of actual innocence based upon: (1) police coercion and (2) ineffective assistance of counsel where counsel forced him to plead guilty by informing him that if he did not do so he would receive the death penalty. The State concedes that a defendant whose petition presents a valid claim of actual innocence is not required to satisfy the cause-and-prejudice test, but contends that defendant here has failed to present a valid claim of actual innocence. We agree with the State.

At the outset, we note that we need not consider defendant's actual innocence claim predicated upon ineffective assistance of counsel resulting from counsel's pressure on defendant to plead guilty, since that claim, even if otherwise validly presented, is barred by the doctrine of *res judicata*. There is no question that, generally, postconviction petitions are subject to the doctrine of *res judicata*, so that all issues actually decided on direct appeal or in the original postconviction petition are barred from being relitigated in subsequent petitions. People v. Blair, 215 Ill. 2d 427, 443 (2005). More specifically, this also applies to claims of actual innocence,

17

insofar as they are not new or predicated upon new evidence. See Ortiz, 235 Ill. 2d at 332 (holding that unless defendant presents newly discovered evidence in his claim of actual innocence, the preclusion doctrines of *res judicata*, collateral estoppel and law of the case will prevent defendant from " ' "taking two bites out of the same appellate apple" ' " and avoid " 'piecemeal postconviction litigation' "), quoting People v. Tenner, 206 Ill. 2d 381, 395, 398 (2002), quoting People v. Parte, 125 Ill. 2d 234, 37 (1988).

Here, the record unequivocally establishes that the issue of counsel's ineffectiveness has been raised and fully adjudicated more than once. Prior to the instant petition, defendant unsuccessfully raised the same exact allegations on three separate occasions (in his motion to vacate his guilty pleas, which was recharacterized as an original postconviction petition, as well as in his second and third postconviction petitions), where he alleged that he was deprived of effective assistance of counsel when counsel "coerced" him to plead guilty through repeated statements that if he proceeded to trial, he would receive the death penalty. Each time, the circuit court found defendant's allegations without merit, and in considering the dismissal of defendant's last two petitions,[5] we affirmed the decision of the circuit court.[6]

---

[5]We note that after the recharacterization of defendant's motion to vacate his guilty pleas, and the subsequent dismissal of defendant's original postconviction petition by the circuit court as "frivolous and patently without merit," defendant did not appeal.

[6]The record reveals that the first time we rejected defendant's claim on appeal with respect to all of his guilty pleas. See People v. Anderson, No. 1-00-2338 (2002) (unpublished order pursuant to Supreme Court Rule 23). In doing so, we found that defendant was barred by the

doctrine of *res judicata* from relitigating this issue since that issue had already been addressed and rejected by the circuit court in its dismissal of defendant's original postconviction petition. See People v. Anderson, No. 1-00-2338 (2002) (unpublished order pursuant to Supreme Court Rule 23).

The second time, defendant's appeal was taken only from case No. 90 CR 11979, even though defendant sought to include the remaining guilty pleas on appeal, since defendant failed to include the other case numbers in his notice of appeal. See Anderson, 375 Ill. App. 3d at 142-43. In rejecting defendant's claim of ineffective assistance of counsel, we again found that defendant's claim was barred by the doctrine of *res judicata*. See Anderson, 375 Ill. App. 3d at 142-43. We further found that even if we were to relax the procedural bar of *res judicata*, defendant's allegation that counsel coerced him into pleading guilty by threatening him with the death penalty was "directly refuted by the record" below, which established that during the plea negotiations the State made clear and defendant acknowledged that he understood that " 'this was not a possible death penalty' " case, and defendant stated that no one had either threatened him by force or induced him by promises to enter his guilty plea. Anderson, 375 Ill. App. 3d at 144.

Although in that case we looked only to case No. 90 CR 11979, the reasons and scope of our decision with respect to that case would apply equally to defendant's remaining guilty pleas, if we were to consider their merits on appeal, particularly since we resolved the same issues with respect to all of the guilty plea cases in our second review of this claim. See People v. Anderson, No. 1-00-2338 (2002) (unpublished order pursuant to Supreme Court Rule 23).

Defendant here has not provided us with any new documentation or evidence of any kind to support his contention that counsel in fact "coerced" him into pleading guilty by threatening him with the death penalty. All of the documents defendant relies on in support of his actual innocence claim pertain to the systematic police misconduct and allegations of police torture at Area 2. None of them have any bearing on what transpired between defense counsel and the defendant, nor do they shed any light into defendant's reasons for pleading guilty. Accordingly, defendant cannot use these documents to establish a freestanding claim of actual innocence based upon counsel's ineffectiveness. See People v. Collier, 387 Ill. App. 3d 630, 637 (2008) (holding that "freestanding claims of [actual] innocence contemplate that the newly discovered evidence is not also being used to supplement the assertion of another constitutional violation with respect to the trial"), citing People v. Washington, 171 Ill. 2d 475, 479 (1996). Therefore, there are no new documents that defendant can use to avert the application of the doctrine of *res judicata*, which bars him from relitigating the same issue once again. See Ortiz, 235 Ill. 2d at 330.

We therefore next address defendant's claim of actual innocence based upon police coercion. Although defendant has raised the issue of police coercion before[7], he now attaches

---

[7]The record reveals that defendant initially raised a claim of police coercion in his testimony at a pretrial hearing on his motion to suppress his statements in 1991 and that the trial court found that his confession was not coerced. Defendant next raised this claim of police coercion 13 years later in his third successive postconviction petition. That petition was dismissed by the circuit court, and we affirmed the dismissal with respect to defendant's guilty plea in case No. 90 CR 11979. See Anderson, 375 Ill. App. 3d at 130-31. In doing so, we found that

several new documents, which he contends constitute newly discovered evidence material to his claim, which were not available to him at the time he negotiated and entered his guilty pleas, and which consequently satisfy the requisites of actual innocence.

We note that since defendant's actual innocence claim is predicated on the fact that his confessions were the product of coercion by Detectives McDermott and Maslanka, and that but for that coercion he never would have implicated himself in the cases to which he pleaded guilty, we are limited in scope to addressing those guilty pleas wherein defendant did actually confess. As noted above, the record reveals that defendant made incriminating statements only in 6 out of the 11 cases to which he pleaded guilty (namely, case Nos. 90 CR 11979, 90 CR 11987, 90 CR 11989, 90 CR 11990, 90 CR 11991 and 90 CR 660648), and that these confessions were used as

defendant had forfeited his right to raise a claim of police coercion because defendant was aware of the coercion at the time that it allegedly took place in 1990, and at the time he entered his guilty pleas in 1991, but "chose to abandon these allegations," waiting 13 years to raise them in his third successive postconviction petition. Anderson, 375 Ill. App. 3d at 133. We further found that defendant's claim of coercion was waived because "a voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional ones," and because the record revealed that "the circuit court found on at least three occasions that defendant's guilty plea was entered voluntarily (first, at the time of defendant's plea; second, in denying defendant's motion to vacate his plea, and third, when denying defendant's second postconviction petition)." Anderson, 375 Ill. App. 3d at 133.

the factual basis for his pleas only in those 6 cases. Accordingly, it is only with respect to these six cases that we must now determine whether defendant should be permitted to proceed with his contention of actual innocence based upon police coercion. In any event, even if defendant's actual innocence claim based upon police coercion were to encompass all 11 cases, the same rationale which shall be articulated below would apply.

On appeal, defendant relies on two documents that he contends constitute newly discovered evidence supporting his claim of actual innocence in those cases: (1) the July 2006 Report of the Special State's Attorney's investigation into allegations of torture, including the supplemental OPS memoranda sent to the Special State's Attorney during this investigation summarizing the allegations of police misconduct with respect to the following alleged victims: Cortez Brown, Marcus Wiggins, Jesse Clemon, Tremain Green, Diyez Owens, and Clinton Welton, Michael Peterson, Travis Richardson, Terry Harris, and the defendant; and (2) an undated "Request For A [Public] Hearing Before the Cook County Board On the Special Prosecutors' Police Torture Investigation and Report."[8]

---

[8]We note that defendant attached several more documents to his successive postconviction petition, including, as already noted above: (1) the July 2006 affidavit of codefendant Robert Allen; (2) defendant's own undated affidavit attesting to the factual allegations in his petition; (3) the 1990 report of the Chicago Police Department's Office of Professional Standards regarding police misconduct at Area 2 police station; (4) an excerpt from the 1995 summary report of the Gregory Banks' and David Bates' complaints against Sergeant John Byrne; and (5) a September 1998 chart of police misconduct complaints from 1979 to 1996. However, on appeal defendant

22

No. 1-08-2024

As already noted above, in order to constitute newly discovered evidence, each document must not have been available at defendant's original trial and defendant must not have been able to discover it sooner through diligence. Simmons, 388 Ill. App. 3d at 614, citing Morgan, 212 Ill. 2d at 154. In addition, the evidence must also be material, noncumulative, and of such conclusive character that it would probably change the result on retrial. Morgan, 212 Ill. 2d at 154. "Moreover, the evidence provided by defendant must also be material and noncumulative, and must be of such conclusive character that it would probably change the result on retrial." Simmons, 388 Ill. App. 3d at 614, citing Morgan, 212 Ill. 2d at 154.

It is apparent that neither document was available at the time of defendant's original trial and that defendant could not have discovered either document earlier through due diligence. Simmons, 388 Ill. App. 3d at 614, citing Morgan, 212 Ill. 2d at 154. As already noted above, the Report of the Special State's Attorney only became available in July 2006, 15 years after defendant's guilty pleas were entered on August 9, 1991, and while defendant's appeal of his third postconviction petition was pending before this court. Upon the report's release, defendant immediately requested that he be permitted to use the report as additional authority in his then current appeal of the dismissal of his third successive postconviction petition. Although we

does not, nor could he, argue that these documents constitute newly discovered evidence warranting an opportunity for him to file his successive postconviction petition, since all of them were either available or would have been discoverable through due diligence long before defendant raised his claim of actual innocence based upon police coercion in his current petition. As such, we need not address the relevance of these documents.

23

permitted defendant to file that report as additional authority, we ultimately concluded that a better practice would be to have the circuit court consider the newly discovered document before we reviewed it on appeal. See Anderson, 375 Ill. App. 3d at 138-39. Defendant has, therefore, now attached a copy of that report to his instant motion for leave to file his successive postconviction petition.

It similarly appears from the record that the second document defendant relies upon, namely the Request, was not available at the time of defendant's entry of his guilty pleas and that defendant would not have been able to discover it sooner through the use of due diligence. Although the Request is undated, from its content it is apparent that it was completed after the release of the Report of the Special State's Attorney, since the substance of the Request is to question the impartiality and the conclusions reached by the Special State's Attorney in its investigation of the charges of police misconduct in Areas 2 and 3.

Accordingly, we next turn to the question of the documents' materiality and the degree to which they are of "such conclusive character that [they] would probably change the result on retrial." Simmons, 388 Ill. App. 3d at 614, citing Morgan, 212 Ill. 2d at 154.

We begin with the Report of the Special State's Attorney. That report examined several alleged cases of misconduct involving the same police officers that defendant alleged were involved in coercing his confessions. Specifically, the report examined the case of Alfonzo Pinex and concluded that there existed sufficient evidence to both indict and find Detectives Maslanka and McDermott guilty beyond a reasonable doubt for aggravated battery, perjury, and obstruction of justice in the interrogation of Pinex at Area 2 on June 28, 1985. The report noted that on that

date the two detectives, working together, denied Pinex's requests for counsel and beat him until he soiled himself in order to obtain a confession. The report detailed similar allegations of coercion in the case of Cortez Brown against Detective Maslanka. Brown alleged that on September 21 and 22, 1990, he was threatened with the death penalty and beaten with a flashlight by two officers, one being Detective Maslanka. The report, however, concluded that Brown was not a credible victim.[9] The report also noted the allegations of Marcus Wiggins, who alleged that

[9]Defendant, in a footnote, contends that although the report found Brown incredible, on May 22, 2009, in case No. 90 CR 23997, Judge Clayton J. Crane of the circuit court of Cook County granted Brown a new trial following an evidentiary hearing, noting that evidence of the misconduct of "some, if not all, of the detectives in this case *** staggering *** [and] damning." Defendant urges us to take judicial notice of the comments made by Judge Crane.

Obviously, however, we cannot take such judicial notice since defendant has not provided us with a transcript containing Judge Crane's comments, nor for that matter has he given us any other direction to enable this court to locate those comments so as to determine if they were in fact made, and if so in what context, whether in a colloquy or in an order, whether before trial or during trial, whether on a motion, or in context of postconviction proceedings.

Moreover, even if judicial notice were otherwise appropriately taken, whatever comments Judge Crane may have made about Brown would not alter the contents of the report itself, which is the document that defendant himself has relied on as the newly discovered evidence that would support his claim of actual innocence. Moreover, as we discuss later in the text, even if the report itself contained that information, it would not change the result since, among other things, the

25

Detective Maslanka and other officers coerced his confession in September 1991, when Wiggins was a juvenile, by beating, threatening, and shocking him. Wiggins filed a civil suit against, *inter alia*, Detective Maslanka which resulted in a $95,000 settlement. However, based upon an OPS investigation memo to the Special State's Attorney, which did not sustain the shock and beating allegations, but only found that Detective Maslanka improperly questioned Wiggins without a parent present, the Report of the Special State's Attorney concluded that Detective Maslanka could not be prosecuted due to a lack of corroboration and the fact that the testimony of the officers contradicted Wiggins' claims. Accordingly, at best, the report identifies one single instance of misconduct by Detectives Maslanka and McDermott with regard to Alfonzo Pinex.

Although admittedly and relevantly the Report of the Special State's Attorney implicates Detectives Maslanka and McDermott in coercing a confession from Pinex, it specifically separates itself from any of defendant's charges. A three-page memorandum attached to the report specifically discusses the Special State's Attorneys investigation of defendant's allegations of coercion and recommends that defendant's matter be closed at the office of the Special State's Attorney because:

> "Tony Anderson is an active litigator whose allegations cannot be supported due to a lack of physical and medical corroboration, lack of consistent and documented prior similar allegations to third parties, a lack of consistency in numerous previous pleadings made by Anderson since the events in question, and finally, by a lack of

evidence proffered by the State at defendant's plea hearing amply supported defendant's conviction without depending upon defendant's confessions.

cooperation in the investigation herein on the advice of counsel that such may compromise his pending appeals."

It is thus apparent from its face that with respect to defendant, the Report of the Special State's Attorney does not provide any new evidence to corroborate defendant's allegations that police coercion was deployed against him, but in fact, affirmatively impeaches his credibility with respect to those allegations. Accordingly, this report would have no reasonable likelihood to change the result of defendant's proceedings on retrial, and cannot constitute "newly discovered evidence" of his actual innocence. Simmons, 388 Ill. App. 3d at 614, citing Morgan, 212 Ill. 2d at 154.

We next address the second document upon which defendant relies, namely, the "Request For A [Public] Hearing Before the Cook County Board On the Special Prosecutors' Police Torture Investigation and Report." The Request, signed by 28 nonprofit organizations (including, *inter alia*, the Midwest Regional Office of Amnesty International, the Northwetsern Law School's Bluhm Legal Clinic, the California Innocence Project, the Center on Wrongful Convictions, the Center for Constitutional Rights, Citizens Alert, the Illinois Association of Criminal Defense Lawyers, the MacArthur Justice Center, and the Chicago Chapter of the National Lawyers Guild), questions the impartiality of the Special State's Attorney's report, and suggests that the findings in the Pinex case are "just the tip of the iceberg" in revealing the prevalent use of torture by officers at Area 2 and later, after their transfers to Area 3, at that police station as well.

The Request makes one specific reference to defendant. The Request notes that the initial

80 allegations of torture all occurred in Area 2 in the period between 1972 and 1987. The Request further notes that in the period between 1988 and 1991, when defendant's alleged coercion took place, many of the officers accused in the initial torture allegations at Area 2 were transferred to Area 3, whereupon some 26 new cases of torture were reported in Area 3. The Request then goes on to note that after the transfer of those officers to Area 3, between 1988 and 1991, there was only one documented allegation of police torture at Area 2 and that was the case reported by defendant. The Request, however, neither describes defendant's allegations nor purports to name the officers that were allegedly involved in the coercive tactics or the means and methods of torture that they allegedly used against defendant.

Defendant nevertheless contends that the Request presents new, material and noncumulative evidence corroborating his allegation of police coercion by Detectives McDermott and Maslanka sufficient to permit him to proceed with his successive postconviction petition. Defendant specifically points out that the Request notes that in the investigation of the 107 allegations of abuse, Detective McDermott has been accused of coercion in 5 cases and Detective Maslanka in 10. The Request later notes that unnamed officers at Area 2 have previously been accused of threatening suspects with guns 15 times and of having beaten suspects with billy clubs on 6 occasions. Defendant contends that these two unconnected statements in the Request identify the same type of coercion tactic that he alleged Detectives Maslanka and McDermott used on him so as to corroborate his contention that they actually coerced his statement, and permit him to proceed with his claim of actual innocence. We disagree.

The Request, however, refers to generalized allegations. Contrary to defendant's

28

assertion, the Request contains no new information upon which these allegations are predicated. The Request does not describe Detectives Maslanka and McDermott as using the mode and manner of torture of which defendant complains. Nor is there anything in the Request that links these detectives to defendant. Although the Request generally notes that officers at Area 2 have been accused of threatening suspects with guns and having beaten them with clubs, it does not purport to name Detective Maslanka or McDermott as an officer accused of such conduct, which is the conduct with which defendant alleges he was coerced. We have previously held that "[g]eneralized claims of misconduct, without any link to defendant's case, *i.e.,* some evidence corroborating defendant's allegations, or some similarity between the type of misconduct alleged by defendant and that presented by the evidence of other cases of abuse, are insufficient to support a claim of coercion." Anderson, 375 Ill. App. 3d at 137-38; see also People v. Reyes, 369 Ill. App. 3d 1, 18-19 (stating that evidence of prior allegations of brutality was relevant and material where it "involved the same officer or officers as in the defendant's case, where they involved similar methods of abuse, and where they occurred at or near the time of the defendant's allegations"), citing People v. Patterson, 192 Ill. 2d 93, 115 (2006); People v. Orange, 168 Ill. 2d 138, 150-51 (1995) ("generalized allegations of coercive activity in Area 2, without other evidence, would not establish that *** defendant was coerced into confessing"); People v. Murray, 254 Ill. App. 3d 538, 553 (1993) (holding that defendant's allegations of abuse of other suspects were properly excluded because they were "general in nature"); see also *e.g.,* People v. Maxwell, 173 Ill. 2d 102, 120-21 (1996) (holding that without some evidence that defendant was injured, evidence of the treatment of other suspects, through reports of physical abuse and

coercion of confessions at Area 2, could not, by itself, be the basis for a postconviction evidentiary hearing).

Even if we were to find the information in the Request otherwise relevant, we would nevertheless find that in light of the amply supportive evidence of defendant's guilt proffered by the State at defendant's guilty plea hearing, this information would have a very limited effect on a trier of fact and would not have the likelihood to exonerate defendant. Collier, 387 Ill. App. 3d at 636 (" 'actual innocence' is not within the rubric of whether a defendant has been proved guilty beyond a reasonable doubt. [Citation.] Rather, the hallmark of 'actual innocence' means 'total vindication,' or 'exoneration' "), quoting People v. Savory, 309 Ill. App. 3d 408, 414-15 (1999).

In that respect, we note that in each of the six cases to which defendant alleges he pleaded guilty only after falsely incriminating himself as a result of police coercion, the State's proffer at the guilty plea hearing established that least one eyewitness identified defendant as the offender.

Specifically, as the factual basis for defendant's guilty plea in case No. 90 CR 11979 the State proffered that the evidence would show that on March 30, 1990, defendant fired two shots from a .25-caliber handgun, killing the victim, and that the same .25-caliber handgun used in the incident was found in defendant's possession upon his arrest. The State also proffered that eyewitnesses to the incident would identify defendant in open court and testify about the incident. The same eyewitnesses would testify that they had already picked defendant out of a lineup.

Similarly, with respect to case No. 90 CR 11987, as the factual basis for defendant's guilty plea the State proffered that on April 8, 1990, together with a codefendant, defendant entered a store, pulled out a handgun and demanded money from two cashiers, after which he led them to

the back room and ordered them to remain there until he left the store with his accomplice. One of those cashiers identified defendant in a lineup.

The same is true of defendant's plea in case No. 90 CR 11989. There, the State proffered that if the case proceeded to trial the evidence would show on March 8, 1990, defendant entered a store displaying a .25-caliber handgun, announced a robbery, cocked his weapon at a store employee and demanded money. Defendant took about $149 from the cash register and fled. The State proffered that several witnesses who were present during the robbery would identify defendant in open court and testify that they had already picked defendant out of a lineup soon after the robbery.

In case No. 90 CR 11990, the State similarly proffered that on April 13, 1990, together with an accomplice defendant entered a liquor store, displayed a .25-caliber handgun and announced a robbery. Defendant forced the victim into the bathroom and began to tear hear clothes off, when a customer entered the store, and defendant was forced to flee with his accomplice, taking with him the victim's money and jewelry. The State proffered that defendant was identified in a lineup by all of the witnesses present during the incident.

In case No. 90 CR 11991, wherein defendant pleaded guilty to two counts of armed robbery, the State proffered that on April 4, 1990, defendant and an accomplice entered a beauty salon whereupon defendant displayed a .25-caliber handgun and announced a robbery. Defendant forced all the patrons to lie down on the floor and then proceeded to take money and jewelry from each of them. Defendant then placed a gun to the owner's head and ordered her to open the safe from which he took an undisclosed sum. The State proffered that seven witnesses positively

identified defendant as the perpetrator and further that the same .25-caliber handgun used in the robbery was recovered on defendant's person upon his arrest.

Finally, in case No. 90 CR 660648, as a factual basis for this plea, the State proffered that on April 17, 1990, together with an accomplice, defendant entered a Clark gas station brandishing a .25-caliber handgun at the two employees. Defendant then led the employees to the back office, where he handcuffed them to a pipe while his accomplice took money from the cash register and safe. The State proffered that both employees would identify defendant in open court as the offender just as they had done in a lineup shortly after the crime.

In light of the State's proffer of eyewitness testimony identifying defendant as the offender in each of the aforementioned cases, there is no reasonable probability that, if defendant's inculpatory confessions in those cases had been excluded, he would not have pleaded guilty to the charges, and instead would have proceeded to trial and been found not guilty. Accordingly, defendant has failed to establish a freestanding claim of actual innocence. See Collier, 387 Ill. App. 3d at 636.

*Cause and Prejudice Test*

In the alternative, defendant contends that he should have been permitted to proceed with his successive postconviction petition because he met the requirements of cause-and-prejudice as articulated in section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2004)). We disagree.

Defendant may well be able to establish cause in so far as he was objectively impeded from raising this claim earlier by pointing to the fact that he did not have the benefit of either the Report of the Special State's Attorney or the Request in his earlier postconviction proceedings, as

they both became available after the dismissal of his third successive postconviction petition. However, for the reasons already discussed above with respect to defendant's attempt to establish a claim of actual innocence, he cannot establish prejudice. In light of the amply supportive evidence proffered by the State at defendant's guilty plea hearing, there is no reasonable probability that had those additional documents evidencing brutality at Area 2 come to light preventing the introduction of defendant's confession, defendant would have proceeded to trial and would have been acquitted of the charged offenses.

## III.  CONCLUSION

For all of the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

CAHILL, P.J., and ROBERT E. GORDON, J., concur.

No. 1-08-2024

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
**(Front Sheet to be Attached to Each Case)**

| | |
|---|---|
| Please use the following form | THE PEOPLE OF THE STATE OF ILLINOIS,<br>        Plaintiff-Appellee,<br><br>v.<br><br>TONY ANDERSON,<br><br>            Defendant-Appellant. |
| Docket No.<br><br>COURT<br><br>Opinion<br>Filed | No. 1-08-2024<br><br>Appellate Court of Illinois<br>First District, SIXTH Division<br><br>        JUNE 11, 2010<br>(Give month, day and year) |
| | JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT: |
| JUSTICES | PRESIDING JUSTICE CAHILL and JUSTICE ROBERT E. GORDON, concur. |
| APPEAL from the Circuit Court of Cook County; the Hon____ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Appeal from the Circuit Court of Cook County;<br><br>The Hon. James B. Linn, Judge presiding. |
| APPELLANTS<br>John Doe, of Chicago<br><br>For APPELLEES,  :<br><br>Smith and Smith of Chicago, | Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel.  Indicate the word FOR NONE if not represented.<br><br>FOR APPELLANT:  Michael Pelletier, Patricia Unsinn, and Brian McNeil, Office of the State Appellate Defender, 203 N. LaSalle Street, 24th Floor, Chicago IL, 60601<br><br>APPELLEE: Lisa Madigan, Attorney General of Illinois, Michael A. Scodro, Solicitor General and Michael M. Glick and Katherine D. Saunders, Assistant Attorneys General, , 100 W. Randolph Street, 12th Floor, Chicago IL 60601 |
| Add attorneys for third-party appellants and/or appellees. | |