2020 IL App (1st) 180305-U

No. 1-18-0305

Order filed June 5, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 2371 |
| | ) | |
| ROOSEVELT JACKSON, | ) | Honorable |
| | ) | Maura Slattery Boyle, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court erred in summarily dismissing defendant's postconviction petition where he raised an arguable claim of ineffective assistance of trial counsel.

¶ 2    Defendant Roosevelt Jackson appeals from the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant contends that he presented the gist of a claim that trial counsel was ineffective for (1) failing to impeach a State witness with a prior statement, and (2) calling a

defense witness whose testimony partly corroborated the State's witness. For the following reasons, we reverse.[1]

¶ 3    Defendant was charged by indictment with eight counts of attempt first degree murder (720 ILCS 5/8-4(a) (West 2012); 720 ILCS 5/9-1(a)(1) (West 2012)), four counts of aggravated battery (720 ILCS 5/12-3.05(e)(1), (f)(1) (West 2012)), two counts of vehicular invasion (720 ILCS 5/12-11.1 (West 2012)), eight counts of attempt armed robbery (720 ILCS 5/8-4 (West 2012); 720 ILCS 5/18-2(a)(1), (2) (West 2012)), and two counts of aggravated unlawful restraint (720 ILCS 5/10-3.1 (West 2012)).

¶ 4    At a May 28, 2013, hearing attended by defendant and private counsel, the following colloquy occurred:

"ASSISTANT STATE'S ATTORNEY [ASA]: *** We are also awaiting additional discovery. I did tender discovery today, which includes the supplementary reports, the photo array, the crash report, some—

THE COURT: How about GPRs?

ASA: I'm still awaiting those. That is still outstanding. The ambulance reports are still outstanding, the DNA, and that's so far—

THE COURT: So you have tendered supps, photos and the crash report?

ASA: Correct."

¶ 5    Trial counsel acknowledged receipt of the described discovery and requested leave to file a demand for trial. The trial court advised defendant that he could not allege ineffective assistance

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

of counsel based on his decision to proceed to trial with outstanding discovery, which defendant stated he understood.

¶ 6    On June 19, 2013, trial counsel requested leave to withdraw "based on [defendant's] continued desire to demand trial short of [counsel] being in receipt of all necessary documents." The trial court denied counsel's request, noting that defendant was aware of the lack of discovery and "insiste[d]" on proceeding. The cause proceeded to trial that day.

¶ 7    Clyde Dubose, a paraplegic, testified that around 6:20 p.m. on December 24, 2012, he drove a rented vehicle with special hand controls to a BP gas station at 66th Place and Stony Island Avenue. As Dubose pulled into the gas station, he saw defendant, whom he knew as Bob, and Jevon Holmes, whom he knew as Chops. Dubose had known them for about 15 years. They approached the front passenger-side door of Dubose's vehicle. Defendant pulled a firearm from his waist, said, "Give me your money, you b*** a*** n***," and struck Dubose on the forehead with the firearm. Dubose attempted to drive away and defendant shot him in the stomach. Dubose continued driving, but "blanked out" and crashed into a pole on his way to a hospital. Paramedics took Dubose to Northwestern Hospital where he underwent eight hours of surgery. While there, Dubose told Detective James O'Brien that defendant shot him and identified defendant from a photo array. Dubose also identified a photo of Holmes.

¶ 8    On cross-examination, Dubose denied being near 66th and Blackstone Avenue or 66th and Dorchester Avenue prior to going to the gas station. He also denied having a telephone conversation that day with defendant, Holmes, or individuals named Rashawn or Walton. Dubose further denied selling drugs.

¶ 9    O'Brien testified that he investigated the shooting. On the median near the 7400 block of South Stony Island, he observed a heavily damaged Dodge Avenger that had knocked over a light

pole. A fired shell casing was on the floor in front of the front passenger seat and a wheelchair was in the back seat. O'Brien later interviewed Dubose at Northwestern Hospital. Dubose stated that defendant shot him and identified defendant from a photo array.

¶ 10    On cross-examination, O'Brien testified that Dubose informed him that the incident started at a BP gas station on the 6600 block of South Stony Island. On the night of December 24, 2012, O'Brien went to the gas station and learned that video equipment was in place, but "could only be obtained during the day time hours." The gas station attendant told O'Brien he did not witness the incident. O'Brien wrote a memorandum instructing the next shift of officers to recover the video, but when officers went to the gas station, it was closed for Christmas. Officers returned on December 26, 2012, but could not obtain the video because "retention *** was only 24 hours," and it had already been recorded over.

¶ 11    Evidence technician Kamal Judeh testified that he went to the crash site around 7:50 p.m. on December 24, 2012, examined the crashed vehicle, and recovered a spent shell casing from the floor of the front passenger seat and a fired bullet from the driver's side floor panel.

¶ 12    The State entered a stipulation that Dubose was admitted to Northwestern Hospital with a gunshot wound to the abdomen causing two holes in his body. Due to the gunshot wound, Dubose underwent an exploratory laparotomy, multiple small bowel resections, a colonic resection, small bowel repair, a colonic repair, and a colostomy creation. Dubose also had injuries to his head and face indicating a motor vehicle accident.

¶ 13    The defense called Charles Starks, who testified he worked at the gas station between 6 and 11 p.m. on December 24, 2012. A shooting occurred that day, but Starks did not witness it because it happened prior to his arrival. A video camera at the gas station recorded most of the building's exterior and the gas pumps. That evening, police officers visited the gas station and

Starks watched video of the shooting with them. Starks testified the video showed someone "come around" the side of the building and "go up to the car, you don't see anything else, but you see them as they're backing back shooting." The gas station was open on December 25, 2012, but Starks did not work that day.

¶ 14    On cross-examination, Starks testified that in the video, he saw only one person inside the vehicle and one person holding a firearm. He could not see the entire vehicle and did not know its make or model, but stated it was a new model and colored burgundy or maroon. Starks believed the video recorded over itself.

¶ 15    Mohamad Sidique Mohamad Ismis testified he worked at the gas station on December 24, 2012, and did not recall a shooting there that day. Police retrieved video from the gas station of a shooting involving a young woman, but Ismis did not know about a shooting involving a man in a wheelchair.

¶ 16    Defendant testified that he had known Dubose for 20 years. Dubose was defendant's drug supplier. Between 1:30 and 2 p.m. on December 24, 2012, defendant called Dubose stating he had $1844 to purchase 2¼ ounces of cocaine. Dubose said he would sell defendant one ounce for $1200. After haggling over the price, defendant told Dubose to come and talk to him.

¶ 17    Around 5:30 or 6 p.m., defendant and Holmes met Dubose on 66th between Blackstone and Dorchester. Dubose drove a newer four-door blue Malibu. Defendant gave Holmes $844 to purchase the cocaine and began walking away when individuals named Flaka and Walt approached. Flaka walked past defendant to the open passenger-side door of Dubose's vehicle, where Holmes was standing, put one knee on the car seat, drew a firearm, and said, "b*** a*** n*** give me my money." Defendant asked Flaka what he was doing. Flaka began to reply when Dubose started to pull the vehicle away, and defendant heard a gunshot. The shooting occurred

5

two blocks from the gas station. On cross-examination, defendant acknowledged that he did not call the police to report that Flaka shot Dubose.

¶ 18    In closing, trial counsel argued, in relevant part, that O'Brien's testimony was contradicted by Starks's testimony that the gas station was open on Christmas and that officers viewed video of the shooting. Counsel stated that if the shooting occurred at the gas station, "then there should have been something on this video that would corroborate what [Dubose] said," but the State failed to provide such evidence.

¶ 19    The trial court found defendant guilty of each count of attempt first degree murder, aggravated battery, and attempt armed robbery, and not guilty of vehicular invasion and aggravated unlawful restraint.

¶ 20    Trial counsel filed a motion for a new trial, which the court denied at a subsequent hearing. Defendant then stated that counsel was never "in touch" with him or his family. Defendant expressed dissatisfaction with having gone to trial without all the discovery submitted, and the trial court responded that defendant indicated his readiness for trial without such discovery. Following a hearing, the court merged the aggravated battery and attempt armed robbery counts into one count of attempt first degree murder and sentenced defendant to 31 years' imprisonment.

¶ 21    On direct appeal, defendant argued the trial court erred in failing to conduct an inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), to determine the factual basis of his *pro se* posttrial claim that trial counsel was ineffective for proceeding to trial without adequate preparation. Defendant also challenged certain fines and fees. We ordered the clerk of the circuit court to correct the fines and fees order and otherwise affirmed. *People v. Jackson*, 2017 IL App (1st) 143802-U.

¶ 22    On November 15, 2017, defendant filed a *pro se* postconviction petition alleging, in relevant part, that trial counsel was ineffective for failing to impeach Dubose with a prior inconsistent statement. Specifically, defendant asserted that counsel "was in possession" of a certain "Incident Report" authored by Officer Chris Williams, which defendant attached to his petition. Williams's report stated that he responded to the accident, and while Dubose was in the ambulance, Dubose said "he was getting gas at the gas station *** when he was approached and shot by unknown persons of unknown description." Defendant argued that trial counsel should have impeached Dubose with this statement because it undermined his testimony that he personally knew the shooter.

¶ 23    Additionally, defendant asserted that trial counsel was ineffective for calling Starks as a witness. Specifically, defendant asserted that Starks did not have "probative value" for the defense and his testimony about the surveillance video helped the State's case by corroborating Dubose's testimony regarding the location of the shooting. Defendant attached a "Case Supplementary Report" stating that, on the night of the incident, someone at the gas station told detectives that "he was unaware of anything happening on the station property" and that video from the gas station "was only available during the day." Defendant also included his own affidavit in which he stated that he told trial counsel that Starks would not help his case, but trial counsel stated that they needed Starks to "explain what happen[ed] to the video surveillance." Defendant responded that it was the State's obligation to explain why the video was not retrieved, but trial counsel told him not to worry and the conversation ended.

¶ 24    On January 4, 2018, the circuit court dismissed defendant's petition as "frivolous and patently without merit."[2]

¶ 25    On appeal, defendant argues he presented the gist of a claim that trial counsel was ineffective for failing to impeach Dubose with his prior statement contained in the police report, and for calling Starks as a witness where he corroborated Dubose's testimony that the shooting occurred at the gas station and undermined defendant's testimony that it occurred elsewhere.

¶ 26    The Act outlines a three-stage process for a defendant who alleges he suffered a substantial deprivation of his constitutional rights at trial. *People v. Johnson*, 2018 IL 122227, ¶ 14. At the first stage, a defendant need only plead sufficient facts to state the "gist" of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A circuit court may dismiss a petition through a written order if it determines that the petition is "frivolous or patently without merit." *Id.* at 10. A petition is frivolous or patently without merit when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. "[A]n indisputably meritless legal theory is one that is completely contradicted by the record," and "[f]anciful factual allegations include those that are fantastic or delusional." (Internal quotation marks omitted.) *People v. White*, 2014 IL App (1st) 130007, ¶ 18.

---

[2] The common law record includes a letter to defendant from the clerk of the circuit court, dated March 24, 2018, stating that the circuit court denied defendant's motion to reconsider the denial of his postconviction petition on February 20, 2018. The motion is not included in the record on appeal, nothing in the record shows when it was mailed, and neither the electronic docket nor the circuit court's half-sheet states when the motion was received. The electronic docket does contain an entry stating that an unidentified motion was filed on January 30, 2018, but even if that motion is taken to be defendant's motion to reconsider the denial of his postconviction petition, it would postdate the notice of appeal that he mailed on January 21, 2018, and therefore, would not impact our jurisdiction. See, *e.g.*, *People v. Bounds*, 182 Ill. 2d 1, 3 (1998) (even where the defendant filed a motion for reconsideration of the dismissal of his postconviction petition and a notice of appeal on the same date, "the notice of appeal divested the circuit court of jurisdiction" and the reviewing court's jurisdiction "attached *instanter*").

¶ 27    The United States and Illinois constitutions both guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Domagala*, 2013 IL 113688, ¶ 36. At the first stage of postconviction proceedings, a petition alleging ineffective assistance may not be summarily dismissed if it is arguable that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *People v. Tate*, 2012 IL 112214, ¶ 19. During first-stage postconviction proceedings, it is inappropriate to consider whether counsel had a strategic reason for the challenged conduct because "the test is whether it is arguable that counsel's performance fell below an objective standard of reasonableness and whether it is arguable that the defendant was prejudiced." *Id.* ¶ 22. Instead, arguments regarding trial strategy are more appropriate for second stage proceedings, where the defendant has the burden to make a substantial showing of a constitutional violation. *Id.*

¶ 28    In this case, the transcript of proceedings shows the State tendered discovery, including a "crash report" and "supplemental reports," to trial counsel on May 28, 2013. Subsequently, at trial, Dubose and O'Brien testified that while Dubose was hospitalized, he told O'Brien that defendant, whom he had known for 15 years, shot him. Dubose also identified defendant as the shooter from a photo array. Defendant's postconviction petition, however, included an incident report authored by Officer Williams, who stated that he responded to the crash and, while in the ambulance, defendant stated that "unknown persons of unknown description" shot him.

¶ 29    At the outset, defendant's contention that counsel was ineffective for failing to impeach Dubose with his statement in the incident report assumes this report was tendered in discovery by the State. While the State, in its brief on appeal, does not argue otherwise, we observe the record

on appeal does not establish that trial counsel actually had the incident report. Consequently, at this juncture, we cannot say the record validates defendant's position.

¶ 30    At first stage proceedings, however, a defendant's burden to present the "gist" of a constitutional claim is a low threshold (*Hodges*, 234 Ill. 2d at 9), and "[a]ll well-pleaded facts must be taken as true unless 'positively rebutted' by the trial record" (*People v. Brown*, 236 Ill. 2d 175, 189 (2010) (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). While the record does not affirmatively show that counsel had the incident report, it also does not positively rebut that the incident report was tendered in discovery. Therefore, at this stage, it is at least arguable that if counsel had the incident report, his failure to impeach Dubose with the statement therein was objectively unreasonable and that defendant was prejudiced by it.

¶ 31    In so holding, we recognize that defendant demanded trial before discovery was complete and acknowledged that he could not claim counsel was ineffective for proceeding without said discovery. However, because the record does not rebut the allegation that discovery tendered by the State included the incident report that defendant attached to his postconviction petition, we remand for further proceedings under the Act. See *Brown*, 236 Ill. 2d at 189.

¶ 32    Notwithstanding, the State argues that when Williams spoke with Dubose, Dubose was suffering from a gunshot wound, had just crashed his vehicle, and was thus incapable of making a coherent statement. These arguments, however, require credibility determinations that are inappropriate at this stage of postconviction proceedings. See *Coleman*, 183 Ill. 2d at 380-81 (noting that a circuit court may not engage in fact-finding or credibility determinations at the first stage because all well-pleaded facts are to be taken as true).

¶ 33    Based upon our finding that it is at least arguable that defendant was denied effective assistance of counsel by trial counsel's failure to impeach Dubose with his prior statement in the

incident report, we need not reach defendant's claim that he was denied effective assistance by trial counsel's decision to call Starks as a witness. See *People v. Rivera*, 198 Ill. 2d 364, 374 (2001) (the Act does not permit partial summary dismissals); *People v. Romero*, 2015 IL App (1st) 140205, ¶ 27 ("If a single claim in a multiple-claim postconviction petition survives the summary dismissal stage of proceedings under the *** Act, then the entire petition must be docketed for second-stage proceedings regardless of the merits of the remaining claims in the petition."). Although we remand this case for second stage proceedings under the Act, we express no opinion as to whether defendant's petition will ultimately support a substantial showing of a constitutional violation.

¶ 34      For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 35      Reversed and remanded.