# Illinois Official Reports

## Appellate Court

---

### *People v. White*, 2014 IL App (1st) 130007

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENYATTA WHITE, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-0007 |
| Filed | December 18, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CR-7109; the Hon. Diane Gordon Cannon, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Geneva L. Penson, of Law Office of Geneva L. Penson, LLC, of Aurora, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michele Grimaldi Stein, and Michelle Katz, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices Epstein and Ellis concurred in the judgment and opinion.


**OPINION**

¶ 1      Kenyatta White was convicted of first degree murder in the shooting death of Aramein Brown after a bench trial conducted in the circuit court of Cook County in 2006. In 2012, defendant initiated proceedings for relief pursuant to the Illinois Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). The postconviction petition alleged that defendant is actually innocent of the crime for which he was convicted and that defendant was denied his rights to due process and effective assistance of counsel at trial and on direct appeal. The circuit court of Cook County dismissed the petition as frivolous and patently without merit. We hold that this petition for postconviction relief, when liberally construed and taken as true, as required by law when determining the sufficiency of an initial postconviction petition, has an arguable basis in law and fact and should proceed to the second stage of postconviction proceedings.

¶ 2      The circuit court of Cook County's judgment is reversed and the cause remanded for further proceedings.


¶ 3                                    BACKGROUND
¶ 4      A summary of the relevant evidence adduced at trial will suffice to give context to the allegations in the petition and the evidence defendant attached in support of that petition.

¶ 5      The charges against defendant arose from the January 6, 2003, shooting death of Aramein Brown at a gas station at 79th and Yates in Chicago. Police arrested defendant pursuant to a warrant and placed him in a lineup. Defendant's attorney was present for the lineup but was not able to view the witnesses when the witnesses viewed the lineup participants. Witnesses identified defendant as the shooter from the lineup. Martina Brewer was the victim's girlfriend and was present when the crime occurred. Brewer testified before the grand jury and identified the shooter as a person she knew by the nickname "Yatta." Brewer also identified a photograph of Yatta before the grand jury. Brewer identified defendant as the person she knew as Yatta at defendant's trial.

¶ 6      Following grand jury proceedings, the State conducted a bond hearing for material witness Martina Brewer. At the bond hearing for Brewer, the State alleged Brewer had indicated she would not come to court to testify because she was afraid. Brewer testified at the bond hearing that she was afraid to testify in the case.

¶ 7      Brewer eventually testified at defendant's trial; however, Brewer's trial testimony was inconsistent with the prior testimony she gave before the grand jury. At the trial, Brewer testified that on the night of the murder while at the gas station with the victim, she heard a loud sound and saw "the guy" running away. Defendant would later testify that he is incapable of running due to a medical condition. The victim fell to the ground and did not move. The victim's brother, Ajani Brown, arrived at the scene. Brewer testified that Ajani asked Brewer if she knew who killed the victim. Brewer told Ajani she did not know who killed Aramein. Brewer testified that Ajani told her to say that Yatta was the murderer. She testified, however, that she did not know who killed Aramein. The State elicited testimony

from Brewer acknowledging her identification of defendant before the grand jury. The defense stipulated to Brewer's grand jury testimony through the assistant State's Attorney who spoke to Brewer when she appeared as a witness before the grand jury.

¶ 8    At defendant's trial, Brewer denied telling police at the hospital that Yatta shot Aramein, but she acknowledged that at the police station she told police she knew the offender and that his name was Yatta. Detective Alejandro Almazan testified that he spoke to Brewer at the hospital after the shooting and that Brewer told him she knew the shooter by the name of Yatta or Kenyatta. Brewer's testimony also confirmed that she identified defendant from a photo array while at the police station. A police detective, Brandon Deenihan, also testified that Brewer identified defendant from a photo array a few hours after the shooting. The detective testified that Brewer never told him that Ajani Brown threatened her. On cross-examination Brewer reiterated her testimony that defendant was not the shooter. She also testified regarding a statement she provided to defendant's trial attorney recanting her prior sworn testimony.

¶ 9    Sherry Collier was at the gas station that was the scene of the shooting using a pay telephone when the shooting took place. Collier testified that she was new to the neighborhood at the time of the murder. She observed a van at the gas pumps and a man walking toward her. The man came close to her and, Collier testified, she got a good look at him. Collier identified defendant as that man. The man pulled out a black gun and started toward the gas pumps. The man shot another man standing by the van at the pumps. The victim started to run and the shooter followed, the victim fell, the man shot him again, then the shooter ran away at full speed. Collier testified that police arrived in less than 10 minutes. Police officer Ken Francisco later testified he was only a block and a half away when he was dispatched to the shooting and he arrived within minutes. Collier spoke to police and gave them a description of the shooter. On cross-examination, Collier agreed with defense counsel that defendant has a distinctive face but she did not mention that to police. A week later Collier chose defendant's picture from a series of photographs police showed her at the police station. She also testified that she identified defendant as the shooter at a lineup. Another witness, Shawn Davis, testified in defendant's trial. He also identified defendant as the shooter from a photo array and again at trial.

¶ 10   Asim Akbar testified for the defense. Akbar and David Jennings had arranged to sell marijuana to Aramein Brown at the gas station on the night of Aramein's murder. Akbar testified they had completed that transaction and Akbar was returning from the inside of the gas station when he observed a man approach from the rear of Akbar's van and shoot Aramein. Akbar testified that the man who shot Aramein was not in court. Brian Williams testified that he was with Keith Slaughter driving by the gas station when they heard gunshots. Williams testified he saw a man run from behind the gas station and fall, and then another man in brown clothing came from behind the gas station with a gun. Williams testified an investigator for the defense showed him photographs (of defendant) and that the person in the photos was not the person he saw the night of the shooting. Keith Slaughter also testified for the defense. At trial, Slaughter insisted he never positively identified defendant as the shooter, but the State elicited testimony from other witnesses who testified that Slaughter positively identified defendant.

¶ 11   Following closing arguments, the trial court found the State proved defendant guilty of first degree murder beyond a reasonable doubt. Defendant appealed, and this court addressed defendant's claim he suffered a violation of his sixth amendment right to counsel at the

lineup under the closely balanced evidence prong of the plain error rule. *People v. White*, 395 Ill. App. 3d 797, 808 (2009). This court affirmed the conviction because the right had not yet attached at the lineup. *White*, 395 Ill. App. 3d at 829. Defendant filed a petition for leave to appeal. Our supreme court, however, found that the evidence was not closely balanced. In connection with its holding that the evidence of the lineup identification of defendant did not "tip the scales" against him, the court stated "our exhaustive recitation of the evidence in this case demonstrates just how heavily the evidentiary balance weighed in the State's favor." *People v. White*, 2011 IL 109689, ¶ 135. The court also affirmed the conviction. *Id.* ¶ 154.

¶ 12 Defendant then filed for postconviction relief under the Act. In support of the petition, he attached affidavits from Monte Dawson, David Jennings, Blessth Beacham, and attorney Richard Goldwasser. Goldwasser was defendant's attorney for the direct appeal. Defendant also attached a report of investigation by the Drug Enforcement Administration (DEA) regarding an interview of Sundiata Brown, the victim's brother. The petition alleges, in pertinent part, that David Jennings said during a postconviction investigation that he was at the scene and that defendant did not shoot Aramein. Defendant also alleged that Ajani threatened Jennings to influence Jennings into implicating defendant in the murder. The petition alleges that Jennings' statements entitle defendant to reversal of his conviction.

¶ 13 David Jennings' affidavit states that Jennings is the Browns' cousin and that, on the night of the murder, Akbar asked Jennings to accompany him to the gas station to meet Aramein for the purpose of selling Aramein marijuana. Jennings avers that when he and Akbar arrived, Aramein was already there and parked at the gas pumps. When the transaction was completed, Aramein stood at the passenger side of Akbar's vehicle and spoke to Jennings. Jennings avers that he heard gunshots and turned to see a man with a gun running quickly through the gas station lot. Jennings avers, "I saw the man who shot my cousin, Aramein, and it was not Kenyatta White."

¶ 14 Jennings further avers that Ajani was angry with Jennings for not firing at the man who shot Aramein and that later, after a show of force near Jennings' grandmother's home, "Ajani told me to say that Kenyatta White shot Aramein, and said that if I didn't say that he would harm me." Ajani also allegedly told Jennings to make a statement to "the feds" with his attorney, who also had represented the Browns in the past. Jennings avers that he had never spoken to any attorney or investigator for defendant and "even if they had tried to contact me, I would not have spoken with them." Jennings concluded by saying he continued to be "reluctant to speak with the lawyer and investigator who came to see me this month, and even more reluctant to give them an affidavit. Aramein Brown was my cousin, and I hate to make my family sad or angry. However, I know that Kenyatta White did not shoot my cousin, Aramein, and I am giving this affidavit now because I feel it is the right thing to do."

¶ 15 The trial court dismissed the petition at the first stage of postconviction proceedings.

¶ 16 This appeal followed.

¶ 17 ANALYSIS

¶ 18 The Act establishes a three-stage process to adjudicate postconviction petitions. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 46. Atypically, defendant is represented by counsel at the first stage of postconviction proceedings. The standards applicable at the first stage remain unchanged. 725 ILCS 5/122-2.1(b) (West 2012) ("If the petition is not dismissed pursuant to this Section [(first-stage review)], the court shall order the petition to be docketed

for further consideration in accordance with Sections 122-4 through 122-6."); *People v. Tate*, 2012 IL 112214, ¶¶ 11-12. The second stage of postconviction proceedings, not the first stage, is "where the postconviction petition can be said to be at issue." *Tate*, 2012 IL 112214, ¶ 10. The decision to dismiss a postconviction petition at the first stage is reviewed *de novo*. *Thomas*, 2014 IL App (2d) 121001, ¶ 48.

> "At this stage, the court treats allegations of fact as true so long as those allegations are not affirmatively rebutted by the record. [Citation.] Any petition deemed frivolous or patently without merit must be dismissed. [Citation.] A petition is frivolous or patently without merit where it has no arguable basis either in law or in fact in that it is based on an indisputably meritless legal theory or fanciful factual allegations. [Citation.] An example of an indisputably meritless legal theory is one that is completely contradicted by the record. [Citation.] Fanciful factual allegations include those that are fantastic or delusional. [Citation.]" *Thomas*, 2014 IL App (2d) 121001, ¶ 47.

To survive the first stage of postconviction proceedings, a petition claiming actual innocence based on newly discovered evidence must present evidence that is arguably "new, material, noncumulative *** [and] so conclusive it would probably change the result on retrial." *People v. Coleman*, 2013 IL 113307, ¶ 96; *Thomas*, 2014 IL App (2d) 121001, ¶ 47. We will review the petition and the Jennings affidavit to determine whether defendant has set forth a claim of actual innocence sufficient to survive first-stage dismissal.

¶ 19                                      1. Newly Discovered Evidence

¶ 20        The State argues Jennings' affidavit is not newly discovered evidence because the defense knew of and attempted to interview Jennings. To constitute "newly discovered evidence" the evidence must have been unavailable at the original trial and evidence that could not have been discovered sooner through diligence. *People v. Anderson*, 402 Ill. App. 3d 1017, 1028 (2010). Jennings averred that Ajani threatened to kill him and told Jennings to say that Kenyatta White shot Aramein, "and said that if I didn't say that, he would harm me." Jennings further averred that he remained reluctant to speak to the investigator for the defense or to provide an affidavit, but that he now feels that it is the right thing to do.

¶ 21        In *People v. Harper*, 2013 IL App (1st) 102181, ¶ 42, the affidavit in support of the defendant's successive postconviction petition alleged that the affiant had lied at the defendant's trial and that police officers threatened him to obtain the testimony. This court held that "due diligence could not have compelled [the affiant] to testify truthfully at the first trial." *Id.* Jennings did not testify falsely at the first trial but his affidavit states that he gave a statement to "the feds" under threat of harm by Ajani presumably naming defendant as Aramein's murderer. Jennings' statements could be construed to allege that no defense counsel ever tried to contact him, and that allegation is rebutted by the record and defendant's affidavit. But defense counsel's attempts to contact Jennings do not answer the question of whether the evidence he could provide could have been discovered sooner through diligence. Jennings also averred that if the defense had tried to contact him, Jennings would not have spoken with them and defendant's allegations corroborate Jennings' statement Jennings would not speak to the defense.

¶ 22        Although Jennings' affidavit does not describe facts or circumstances that have arisen or changed that make him now willing to testify to what he saw on the night of the murder, taking his statements as true and construing Jennings' affidavit in favor of defendant, as we

must, we find that no amount of diligence by defendant could have compelled Jennings to testify to the statements in his affidavit sooner. *Id.* Accordingly, we hold that Jennings' affidavit is arguably newly discovered evidence. See also *People v. Williams*, 392 Ill. App. 3d 359, 369 (2009) (finding affidavit of participant in crime who had not been heard from before newly discovered evidence where the defendant argued that affidavit could not have been offered earlier because affiant had not previously agreed to provide an affidavit).

### 2. Material and Noncumulative

We also find that Jennings' affidavit is arguably material and noncumulative. "Material means the evidence is relevant and probative of the petitioner's innocence. [Citation.]" *Coleman*, 2013 IL 113307, ¶ 96. "Noncumulative means the evidence adds to what the jury heard. [Citation.]" *Id.* Jennings' affidavit is probative because he avers that defendant is not the man who shot Aramein. The fact that Akbar testified similarly to the statements in Jennings' affidavit does not make Jennings' statements merely cumulative of evidence presented at trial. Jennings' evidence would add to what the jury heard by providing an additional description of the shooter. Jennings averred that the person who shot Aramein was "smaller, much younger *** than Kenyatta White." Jennings' statements are also additional evidence that a witness who knew defendant could state that defendant was not the shooter. The evidence goes to the ultimate issue in the case and, if believed, would "produce new questions to be considered by the trier of fact" that concern defendant's guilt. *People v. Molstad*, 101 Ill. 2d 128, 135 (1984). Accordingly, we find that the evidence in Jennings' affidavit is arguably material and noncumulative.

### 3. Likely to Change the Result on Retrial

The State also argues Jennings' affidavit is not of such conclusive character as to likely change the result of the trial because Jennings' testimony would be impeached by his previous statements identifying defendant as the murderer to the authorities. We reject the State's argument applied to an initial postconviction petition at the first stage of postconviction proceedings. When a defendant claims actual innocence in an initial postconviction petition, at the first stage of postconviction proceedings the court may only determine whether the facts alleged in support of the claim are either fantastic or delusional[1] or positively rebutted by the record, and whether those unrebutted facts, taken as true, exonerate the defendant of the crime for which he or she was convicted. *Thomas*, 2014 IL App (2d) 121001, ¶ 47. The first stage of postconviction proceedings in a noncapital case presents the defendant with a "low threshold" requiring only that the defendant plead sufficient facts to assert an arguably constitutional claim. (Internal quotation marks omitted.) *People v. Brown*, 236 Ill. 2d 175, 184 (2010). Although the evidentiary balance weighed heavily in the State's favor at defendant's trial, for the following reasons we find that

---

[1]"Our supreme court has based its definition of fanciful and delusional claims on recent federal *habeas corpus* cases ***. [Citation.] Examples of 'factual fanciful allegations' identified by federal courts include: a defendant's claim that he was drugged and raped 28 times by inmates and prison officials at different institutions [citation]; a claim that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts [citation]; and a prisoner's claim that prison guards intentionally put metallic substances in the prisoner's food [citation]." *People v. Jones*, 399 Ill. App. 3d 341, 374 (2010).

defendant has pled sufficient facts supported by Jennings' affidavit to assert at least an arguable claim of actual innocence sufficient to survive the first stage of postconviction proceedings.

¶ 27    In *People v. Henderson*, 2014 IL App (2d) 121219, ¶ 37, the Second District held that the defendant had alleged sufficient facts to avert the first-stage dismissal of his initial postconviction petition. *Id.* The defendant in *Henderson* was convicted of first degree murder and attempted first degree murder and the affiant was the survivor of the shooting. *Id.* ¶ 10. There, the affiant had testified at the defendant's trial but exercised his privilege against self-incrimination. *Id.* ¶ 6. The court found that "[w]here none of the several eyewitnesses to the shooting identified defendant as the shooter and where no physical evidence linked defendant to the shooting, testimony from the surviving victim exonerating defendant arguably would carry weight with the trier of fact." *Id.* ¶ 35.

¶ 28    Although evidence of defendant's guilt in this case is arguably stronger than was the evidence against the defendant in *Henderson*, at the first stage of postconviction proceedings we cannot say that the petition supported by Jennings' affidavit lacks an arguable basis in law or in fact. The statements in Jennings' affidavit are not factually fantastic or delusional. Jennings averred that he was seated in Akbar's vehicle talking to Aramein when he heard gunshots. Jennings stated that he saw a man with a gun running through the lot. Jennings' statements as to the circumstances of the murder are consistent with other evidence in the case. Jennings averred he saw the man who shot Aramein and that man was not defendant. At this stage of proceedings all well-pled facts not positively rebutted by the record are taken as true. *People v. Harmon*, 2013 IL App (2d) 120439, ¶ 22. The conflicting evidence at defendant's trial required the trier of fact to make credibility determinations to find defendant guilty. Therefore, at this stage of proceedings we cannot say that Jennings' averments exonerating defendant are positively rebutted by the record. *Harmon*, 2013 IL App (2d) 120439, ¶ 22 (court is not allowed to engage in any credibility determinations at the first stage).

¶ 29    The petition has an arguable basis in law because the evidence in Jennings' affidavit arguably has the potential to exonerate defendant. See *People v. Harper*, 2013 IL App (1st) 102181, ¶ 49 ("where newly discovered evidence is both exonerating and contradicts the State's evidence at trial, it is capable of producing a different outcome at trial"). Although multiple witnesses testified that defendant was the shooter, the court may not engage in an assessment of the relative weight of the evidence supporting the defendant's conviction and the evidence which exonerates the defendant at the first stage. *Harmon*, 2013 IL App (2d) 120439, ¶ 22 (court is not allowed to engage in any fact finding at the first stage). At the first stage this court should only be concerned with whether the petition lacks an arguable basis in law and fact. *Id.*

¶ 30    The State cites *People v. Cunningham*, 267 Ill. App. 3d 1009, 1016-17 (1994), in support of its argument that Jennings' affidavit "could not even arguably be said to probably alter the result on retrial." The State's reliance on *Cunningham* is misplaced and the holding in that case does not control the disposition of this appeal. In *Cunningham* the defendant filed a postconviction petition which alleged that, at the defendant's trial, the trial court applied the wrong constitutional standard to assess the admissibility of an extrajudicial third-party confession when it excluded the confession. *Id.* at 1012. The issue at trial was whether the confession was sufficiently trustworthy to merit admission of hearsay testimony of the substance of the confession under the declarations against penal interest exception to the rule

against hearsay. *Id.* at 1013-14. In support of the claim that the trial court erroneously excluded the evidence from the defendant's trial, the defendant attached an affidavit from another party which the defendant argued corroborated the confession "so as to enhance its reliability to the requisite level of trustworthiness to merit its admissibility." *Id.* at 1014. Initially, we note that the decision in *Cunningham* arose from second-stage postconviction proceedings. There, the State moved to dismiss the petition, the trial court granted the motion, and the petitioner appealed. *Id.* at 1012. Thus, the petition at issue in *Cunningham* was not being judged by the same low pleading threshold as is the petition before this court now. At the second stage of postconviction proceedings, a petition must make a "substantial showing of a constitutional violation [citation]." (Internal quotation marks omitted.) *Tate*, 2012 IL 112214, ¶ 19. "A different, more lenient formulation applies at the first stage ***." *Id.*

¶ 31     Moreover, *Cunningham* does not aid our decision as to whether it is arguable that Jennings' affidavit is so conclusive it would probably change the result on retrial. The *Cunningham* court held that even if it applied the standard the defendant argued should apply, the confession was not trustworthy and the trial court had not abused its discretion. *Cunningham*, 267 Ill. App. 3d at 1017. As for the affidavit which allegedly corroborated the extrajudicial confession, the *Cunningham* court affirmed the order dismissing the postconviction petition based on the affidavit. *Id.* The sole basis for the trial court's dismissal was the defendant's lack of diligence in obtaining the statement in the affidavit. *Id.* at 1018. The *Cunningham* court agreed, holding that the affidavit was not admissible as newly discovered evidence. *Id.*

¶ 32     *Cunningham* is not controlling because the court did not decide that case on the basis of whether the alleged confession or the evidence in the affidavit was arguably likely to change the result of the trial. The issue in *Cunningham* was whether the trial court made an error of constitutional dimension when it found the statement was inadmissible at trial because it was unreliable. We acknowledge that the appellate court in *Cunningham* affirmed the dismissal of the postconviction petition on the basis that the alleged statement exonerating the defendant was untrustworthy and inadmissible at the trial, in part, because there was evidence of a contrary statement by the same individual. *Id.* at 1016-17. However, the appellate court did not make that finding in the context of how a trial court should weigh an affidavit attached to a postconviction petition at the first stage to determine whether it would change the outcome at trial. Rather, the court simply held that because of the contrary statement and other factors related to the trustworthiness of extrajudicial statements, including the timing of the statement and to whom it was made (*id.* at 1016), the alleged confession was not admissible at the defendant's trial as a declaration against penal interest. *Id.* at 1017.

¶ 33     In light of the low burden placed on a defendant at the first stage of a postconviction proceeding, it is at least arguable that the evidence in Jennings' affidavit, which states that defendant did not shoot Aramein, is so conclusive as to probably change the result on retrial. *Henderson*, 2014 IL App (2d) 121219, ¶ 37 (citing *People v. Hodges*, 234 Ill. 2d 1, 20-21 (2009)). We hold that the petition for postconviction relief supported by Jennings' affidavit is sufficient to survive the first stage of postconviction proceedings. The petition must advance to the second stage, where "the circuit court must determine whether the petition and any accompanying documents make a substantial showing of a constitutional violation." (Emphasis and internal quotation marks omitted.) *Henderson*, 2014 IL App (2d) 121219, ¶ 37. We have no need to address any of the other claims in the petition because partial

summary dismissals are not permitted during the first stage of a postconviction proceeding. *People v. Rivera*, 198 Ill. 2d 364, 374 (2001). Because defendant's claim of actual innocence based on Jennings' affidavit is sufficient to advance his petition for postconviction relief to the second stage, we remand for second-stage proceedings on the entire petition. *Id.* at 371.

¶ 34                                              CONCLUSION

¶ 35        For the foregoing reasons, the circuit court of Cook County's judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

¶ 36        Reversed and remanded.