2022 IL App (1st) 191147-U

No. 1-19-1147

Order filed February 22, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 6253 |
| | ) | 14 CR 6254 |
| | ) | 14 CR 6256 |
| | ) | |
| GEORGE DOMINGUEZ, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: The summary dismissal of defendant's postconviction petition is reversed where defendant raised an arguable claim of actual innocence.

¶ 2    Defendant George Dominguez appeals from the summary dismissal of his petition for post-conviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). On appeal, defendant contends that he raised an arguably meritorious claim of actual

innocence where the complainant trial witnesses recanted their testimony in affidavits attached to his petition. For the following reasons, we reverse.

¶ 3    Following a bench trial in 2016, defendant was found guilty of multiple sexual offenses against three minor victims, J.B., G.D., and R.D., and sentenced to an aggregate term of 25 years' imprisonment.[1] The facts of this case are detailed in this court's order on direct appeal. See *People v. Dominguez*, 2020 IL App (1st) 162433-U. Accordingly, we recount only the facts necessary to resolve the present appeal.

¶ 4    In April 2014, defendant was indicted after grand jury proceedings where Maria S. testified that she had four children, J.B., M.B., G.D., and R.D., and was in a 14-year relationship with defendant. During their relationship, Maria S. observed defendant commit sexual acts against all four minors. On March 3, 2014, Maria S. reported these acts to Detective Manuel De La Torre and Assistant State's Attorney Brian Whang.

¶ 5    At trial, during the State's case-in-chief, J.B., G.D., and M.B. testified that defendant committed sexual acts against them and their two-year-old brother, R.D, during his relationship with Maria S.

¶ 6    Maria S. testified that she never saw defendant sexually touch any of the minors, and did not report the specific sexual acts to Detective De La Torre at the Children's Advocacy Center (CAC) on March 3, 2014. She testified that she informed Dr. Michelle Lorand, who examined the minors, and Ada Perez-Al Muhtaseb, a Department of Children and Family Services (DCFS) employee, that defendant inappropriately touched the minors, but only because she "didn't want

---

[1] Defendant was indicted in four different cases which the court joined for trial: case numbers 14 CR 6253 (involving J.B); 14 CR 6254 (involving R.D.); 14 CR 6255 (involving M.B.); and 14 CR 6256 (involving G.D.). Defendant was acquitted in the case involving M.B.

him at the house anymore," as he drank "a lot" and would not leave. Maria S. denied testifying before the grand jury about specific sexual acts defendant committed against M.B., G.D., and R.D.

¶ 7    De La Torre testified that on March 3, 2014, he met with Maria S. at CAC where she reported that she observed defendant touch M.B., G.D., and R.D.

¶ 8    The State entered a stipulation that Alison Alsott, a forensic interviewer at CAC, interviewed 10-year-old G.D. and the recording of the interview was entered into evidence. In the video, G.D. describes three incidents where defendant touched G.D.'s bare penis and buttocks. The State also entered a stipulation as to the content of Maria S.'s grand jury testimony describing the sexual acts she observed defendant commit against M.B., G.D., and R.D.

¶ 9    During defendant's case-in-chief, M.B. and G.D. recanted their prior trial testimonies. M.B. asserted that when she stated that she saw defendant inappropriately touch G.D., she was lying under Maria S.'s instructions in order to "get [defendant] out of the house because he was an alcoholic." On cross-examination, M.B. stated that defendant touched her breasts and buttocks multiple times, but that Maria S. told M.B. and her siblings to inform DCFS that they saw defendant touch G.D. on his private parts. G.D. testified that Maria S. told him to state that defendant touched his penis and "butt," which were lies.

¶ 10    Victoria S., Maria S.'s mother, testified that she helped babysit the minors from 2004 to the time of trial. She never observed defendant commit sexual acts upon the minors. Defendant then testified that he never committed any sexual act against any of the minors.

¶ 11    In rebuttal, J.B. testified that Maria S. never told her or her siblings to lie that they saw defendant touch G.D.'s penis. Perez-Al Muhtaseb testified that on February 21, 2014, she

investigated defendant for sexual molestation of M.B., G.D., and R.D. M.B. told Perez-Al Muhtaseb that she saw defendant touch G.D.'s penis.

¶ 12    The court found defendant guilty of predatory criminal sexual assault against J.B., and aggravated criminal sexual abuse against G.D. and R.D. The court found defendant not guilty as to the charges related to M.B., because she testified during defendant's case in-chief-that she lied to DCFS and the court. In ruling, the court commented that Maria S.'s trial testimony was not credible and that she was impeached with her grand jury testimony. The court did not find G.D.'s recantation during trial to be credible, commenting that he was acting as a "dutiful son" and was not "intelligent enough" to fabricate the story. The court found J.B. to be credible and not significantly impeached. Following a hearing, the court sentenced defendant to an aggregate term of 25 years' imprisonment.

¶ 13    On direct appeal, defendant argued that the State failed to prove him guilty beyond a reasonable doubt of the aggravated criminal sexual abuse of G.D. and R.D., because G.D., M.B., and Maria S. recanted their testimony regarding the sexual abuse of G.D. and R.D. We affirmed. *People v. Dominguez*, 2020 IL App (1st) 162433-U (Nos. 1-16-2433, 1-16-2692, & 1-16-2696 consolidated) (unpublished order under Illinois Supreme Court Rule 23).

¶ 14    On January 22, 2019, while the direct appeal was pending, defendant filed a postconviction petition through counsel. Defendant argued his actual innocence in all three cases, and attached affidavits from J.B., M.B., G.D., and Maria S. recanting their prior allegations of sexual abuse.[2] Each witness averred that if sworn, he or she is competent to testify to the matters in the affidavit.

---

[2] In the caption of defendant's postconviction petition, he referenced only trial court case No. 14 CR 6253, the case pertaining to J.B. However, he challenged all three convictions, and thus case Nos. 14

¶ 15    J.B. averred that before the State charged defendant, he drank, constantly argued with Maria S., and created an "intolerable" situation at home. Maria S. attempted to remove defendant from the house by reporting him for "arguing and drinking," but "nothing happened to him." Defendant was also very strict with J.B. Thus, Maria S. decided to "falsely report" defendant for sexual abuse, coached J.B., M.B., and G.D. to describe certain acts of sexual abuse, and told them to "add anything else" they wished. Motivated by her own anger at defendant, J.B. testified against him at the grand jury and trial. J.B. averred that defendant never committed sexual acts against her and she never saw him inappropriately touch M.B., G.D., or R.D.

¶ 16    J.B. further averred that Maria S. consulted with a pastor, and then decided to tell the truth about coaching the minors. An assistant state's attorney, however, intimidated J.B. by telling her she would commit perjury if she changed her testimony.

¶ 17    M.B., G.D., and Maria S. averred similar facts regarding coaching by Maria S. resulting in false testimony. M.B. further averred that defendant never touched her breasts and buttocks multiple times, and she was intimidated by the assistant state's attorney after telling "the truth" to the defense attorney. Maria S. further averred that after giving birth to R.D. in 2012, she suffered from postpartum depression which affected her relationships with the entire family, including defendant. Maria S. eventually chose to "force" defendant out of the apartment, so she coached the minors to lie that defendant had sexually assaulted them. She also averred she had been in a romantic relationship for two years, and had no desire to reunite with defendant either at trial or during postconviction proceedings.

_____

CR 6254 and 14 CR 6256, the cases pertaining to R.D. and G.D., respectively, are also at issue here. We have captioned this appeal accordingly.

¶ 18    In the petition, defendant contended that the affidavits constituted evidence that was newly discovered, material, noncumulative, and so conclusive as would probably change the result on retrial. To that point, he highlighted that J.B., the State's "star witness," provided an affidavit that was entirely noncumulative and that M.B.'s affidavit was noncumulative regarding the acts defendant allegedly perpetrated upon her. Defendant also contended that the affidavits were exonerating and contradicted the State's evidence at trial, no physical evidence linked him to the alleged sexual abuse, and he maintained his innocence.

¶ 19    On April 22, 2019, the circuit court dismissed defendant's petition in a written order, finding the issues frivolous and patently without merit. In pertinent part, the court found that petitioner "failed to overcome the inherent unreliability" of M.B.'s and Maria S.'s affidavits, and their recantations were "legally insufficient—not based on credibility," but because they were already adduced at trial. G.D.'s affidavit was legally insufficient for the same reasons, and the trial court judged his credibility after comparing his recorded statement to the CAC investigator against his recantation testimony. Regarding J.B.'s affidavit, the circuit court concluded:

> "[J.B.]'s affidavit is legally insufficient; not based on credibility, because [she] testified at trial, and was cross-examined by defense counsel. The trial court judged credibility, believed her trial testimony and found defendant guilty. Her affidavit *** *is not newly discovered and is not of such *** conclusive character that it would* change the result on retrial. At any subsequent trial [J.B.]'s testimony, *** would be admissible *** as would her grand jury testimony." (Emphasis in original.)

¶ 20    On appeal, defendant argues that the circuit court erred in summarily dismissing his postconviction petition because the petition stated an arguable claim of actual innocence where he

presented evidence that was newly discovered, material and non-cumulative, and likely to change the result on retrial. He contends that J.B.'s affidavit, in particular, supports advancing the petition because she was the only witness not to partially or completely recant at trial, and the State relied on her testimony to rebut the recantations offered by the other witnesses.

¶ 21 The Act provides a three-stage mechanism for imprisoned persons to collaterally challenge convictions for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et seq*. (West 2018); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). At the first stage of postconviction proceedings, the circuit court must independently review the petition, taking the allegations as true, and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous or patently without merit if it has no arguable basis in law or in fact and, instead, is based on a meritless legal theory or fanciful factual allegations. *People v. Hodges*, 234 Ill. 2d 1, 11-13, 16 (2009). An example of a meritless legal theory is one that is completely contradicted by the record. *People v. White*, 2014 IL App (1st) 130007, ¶ 18. Fanciful factual allegations "include those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 17.

¶ 22 In determining whether a petition presents a valid claim for relief, "the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding," and any affidavits, records, or other evidence supporting its allegations. 725 ILCS 5/122-2.1(c) (West 2018); 725 ILCS 5/122-2 (West 2018). "At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true." *People v. Robinson*, 2020 IL 123849, ¶ 45. In deciding the

sufficiency of a petition, "the court is precluded from making factual and credibility determinations." *Id*. Our review of the summary dismissal of defendant's petition is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 23    To state a claim of actual innocence in postconviction proceedings, a defendant must demonstrate that the supporting evidence was arguably newly discovered, material and not cumulative, and of such a conclusive character that it would probably change the result on retrial. *Robinson*, 2020 IL 123849, ¶ 47; *People v. Sanders*, 2016 IL 118123, ¶ 24. Evidence is newly discovered if it was discovered after trial, and the petitioner could not have discovered it earlier through the exercise of due diligence. *Robinson*, 2020 IL 123849, ¶ 47. Evidence is material if it is relevant and probative of the defendant's innocence, and noncumulative where it adds to the information the factfinder reviewed at trial. *Id*. Lastly, conclusiveness "refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id*. This element is the most important component of an actual innocence claim. *Id*. The new evidence need not be dispositive to be likely to alter the result on retrial, and "[p]robability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id*. ¶ 48.

¶ 24    Liberally construing and taking as true the allegations in defendant's petition and attached affidavits, we find the petition set forth an arguable claim that new evidence would have undermined the trial testimony and led to defendant's acquittal. Specifically, J.B.'s affidavit provides the necessary factual basis to advance the petition to the second stage of proceedings.

¶ 25    First, J.B.'s affidavit is not positively rebutted by the record. Although the affidavit contradicts her testimony at trial, nothing in the trial record makes the averments "incontestably

\*\*\* false or impossible." *Id.* ¶ 60. J.B.'s affidavit asserts that she lied during her initial testimony, and the record does not contain any evidence demonstrating that the version of events in her affidavit is impossible.

¶ 26    Next, J.B.'s affidavit was newly discovered, material, and noncumulative. Defendant could not have discovered J.B.'s recantation prior to trial by the exercise of due diligence because the record does not show that he had evidence other than his own testimony available at the time of trial to demonstrate that J.B. was lying. See *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 53 (a recantation of trial testimony may be considered new evidence, even though a defendant may know the witness to be perjuring himself or herself, where the defendant did not have evidence available at the time of trial to demonstrate the witness was lying). J.B.'s affidavit was material where her assertion that defendant never sexually assaulted her or her siblings was relevant and supported defendant's innocence. See *Robinson*, 2020 IL 123849, ¶ 47. Further, the new evidence was noncumulative where it "add[ed] to the information that the fact finder heard at trial" by corroborating the evidence of defendant's innocence presented at trial via the recantations of Maria S., M.B., and G.D. See *id.*; see also *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 81 (noting that evidence corroborating the defendant's alibi defense was not *per se* cumulative).

¶ 27    Lastly, we find J.B.'s affidavit supporting defendant's actual innocence claim is so conclusive as to probably change the result on retrial. See *Robinson*, 2020 IL 123849, ¶ 47. In assessing whether defendant has satisfied the "low threshold" of an arguable claim of actual innocence, we ask whether the new evidence "places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 48; 60. See *People v. Brown*, 236 Ill. 2d 175, 184 (2010) (A first stage postconviction petition need only assert the gist of a

constitutional claim, which "presents a 'low threshold'[citation], requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim."). That is, "the court considers only whether the new evidence, if believed and not positively rebutted by the record, could lead to an acquittal on retrial." *Id.* ¶ 60.

¶ 28    Under *Robinson*, J.B.'s affidavit was arguably of such a conclusive character that a probability exists that the outcome of defendant's trial would have been different had it been adduced. J.B. was the only victim at trial who did not recant her testimony regarding defendant's sexual offenses against the minors, and the State relied upon her testimony in rebuttal. But J.B.'s affidavit now avers that defendant never sexually assaulted her and her siblings, and that Maria S. told them to lie to investigators. Further, J.B. averred that she did not recant during the trial because she was intimidated by the assistant state's attorney. This evidence, taken as true, could arguably lead to defendant's acquittal. See *People v. Smith*, 2015 IL App (1st) 140494, ¶ 22 (where a witness's testimony was the strongest evidence against the defendant, its recantation had the capacity, if believed, to produce a different result at trial).

¶ 29    The State contends that J.B.'s affidavit was not sufficiently conclusive to alter the result of the proceedings upon retrial because her recantation would be viewed alongside her original testimony and that of her siblings and Maria S. Moreover, according to the State, M.B., G.D., and Maria S.'s testimony describing the abuse against J.B.'s other siblings would be introduced as other crimes evidence for the issues of intent, motive, and propensity. Thus, according to the State, J.B.'s affidavit would not weigh strongly against the evidence previously presented at trial.

¶ 30    Despite the State's contentions, J.B.'s affidavit provides new evidence, taken as true, that defendant was innocent. Credibility determinations are not appropriate at this stage of

postconviction proceedings. *Robinson*, 2020 IL 123849, ¶ 45. J.B.'s recantation corroborates the testimonies of her siblings and Maria S. that defendant did not sexually abuse the minors, and explains her reasons for not recanting prior to the petition. Thus, this new evidence arguably "places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." See *id.* ¶ 48.

¶ 31    Based on the foregoing, defendant has satisfied the low threshold for an arguable claim of actual innocence and the summary dismissal of his postconviction petition was improper. In so holding, we need not address whether the other allegations and supporting affidavits from his postconviction petition contain facts sufficient to state a claim of actual innocence, as a postconviction petition will advance to the second stage if a single claim in the petition is found sufficient. See *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 16. Accordingly, we remand for second-stage postconviction proceedings.

¶ 32    Reversed and remanded.