**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190792-U

Order filed August 26, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0792 Circuit No. 15-CF-428 |
| TRAY B. HARGROW, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Hauptman and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The circuit court erred in dismissing defendant's postconviction petition because it alleged an arguable claim of actual innocence.

¶ 2    Defendant, Tray B. Hargrow, appeals from the Peoria County circuit court's first-stage dismissal of his postconviction petition. Defendant argues that the petition made an arguable claim of actual innocence because the attached affidavits are new, material, noncumulative evidence that clearly and convincingly demonstrate that a trial would probably result in acquittal. We reverse and remand.

¶ 3                                          I. BACKGROUND

¶ 4        Defendant was charged with three counts of first degree murder of Rogelio De La Rosa (720 ILCS 5/9-1(a) (West 2014)). The following evidence was presented at trial.

¶ 5        On December 2, 2014, De La Rosa called his friend Barbara Price at approximately 9 p.m. from USA Technologies where he worked. De La Rosa told Price that a friend was stopping by and he needed to step outside to talk with them. The two men sounded agitated. Price overheard one man tell De La Rosa to "[j]ust get in the car." De La Rosa questioned why the men were doing this and said "[y]ou can have everything I got, just go." The phone call ended abruptly around 9:30 p.m. Price believed De La Rosa's cell phone had been broken. Security footage showed a silver, light-colored minivan arrive at USA Technologies near the employee exit. The van remained for a short period of time and then quickly took off.

¶ 6        At approximately 10 p.m., Officers Brian Sylvester and Jacob Beck heard gunshots while performing a traffic stop. Dispatch informed the officers that a caller stated several gunshots were fired in the area of Perry Avenue and Morton Street. The officers found De La Rosa lying unresponsive on the ground.

¶ 7        Several other officers arrived and canvassed the area around De La Rosa's body. Officers did not speak with any eyewitnesses but found pieces of a cell phone and De La Rosa's wallet. Data was acquired from De La Rosa's cell phone and given to Detective Jason Spanhook.

¶ 8        According to the cell phone data, defendant called De La Rosa 11 times on December 2, 2014. The last call was made at approximately 9:30 p.m. The records also showed that defendant called Robert Mister 22 times on December 2, 2014, with the last call being at 9:50 p.m.

¶ 9        Defendant was detained on unrelated matters and interviewed by Spanhook and Detective Shawn Curry. Defendant acknowledged being a friend of Mister, whose nickname was "CT" or

2

"Cut Throat." Defendant stated that CT was a rapper. Defendant admitted to once buying synthetic cannabis (K2) from De La Rosa. Defendant knew of De La Rosa because he sold K2 to residents of the halfway house where defendant once resided. According to Spanhook, defendant did not reside at the halfway house at the same time as De La Rosa.

¶ 10     Marco McKnight testified that he and defendant had been inmates in the Peoria County jail. McKnight witnessed an officer swab defendant for DNA. Defendant asked McKnight, "[w]hat do you think that was for?" McKnight replied, "[w]ell, I don't know what that's for, only you know what that's for. You ain't got to tell me, but you know what it's for." Defendant stated that he and two or three other people were looking for money to party with, so defendant called "the deceased" because he knew he sold K2 inside the halfway house. Defendant and the others met De La Rosa in the alley between Perry Avenue and Evans Street. They only intended to rob De La Rosa, but he would not give them his belongings, so CT shot and killed him. Defendant searched De La Rosa's pockets and took his money.

¶ 11     McKnight wrote a letter to Curry to inform him he had information. McKnight then spoke with Curry. The following day, defendant asked McKnight whether he "told on him." McKnight replied he did not want to talk to defendant. Defendant approached McKnight from behind and started punching him. They wrestled until the guards broke the fight up.

¶ 12     McKnight acknowledged that he previously entered into a proffer and cooperation agreement with the federal government. On cross-examination, he admitted that he was previously convicted of possession of cocaine with intent to deliver and possession of a controlled substance with intent to deliver. Additionally, McKnight was recently indicted with a federal offense. Pursuant to McKnight's proffer and cooperation agreement, he was required to provide substantial assistance in the investigation or prosecution of other criminal offenses in

3

exchange for a possible sentence reduction. McKnight provided the federal government with statements in the prosecution of his codefendants.

¶ 13        Prior to the defense resting, defendant entered a negotiated plea to one count of first degree murder. Pursuant to the plea, defendant was sentenced to 35 years' imprisonment.

¶ 14        Defendant filed a postconviction petition as a self-represented litigant wherein he asserted "I didn't kill anyone and I was not there at the murder either." Defendant attached two affidavits to his petition. One affidavit was from Steve Holcomb who defendant met while in prison. Holcomb's affidavit read:

> "My name is Steve Holcomb and I lived on Perry and Morton when the Mexican was killed in December of 2014, and I seen the 2 people that killed the man. It was CT the Rapper that was murdered he pulled the trigger he shot the man a few times he fell and then he shot him some more. Then I [saw Demetrius Bell bend] over the body I couldn't really see what was going on but I think he was checking his pockets or something. It was only them 2 people there nobody else then I seen them jump in a blue van and speed off. Also I have proof that I lived in that house my name was on the lease."

¶ 15        The second affidavit was from Edward Spiller who defendant met after the trial. In the affidavit, Spiller claimed he had a conversation with McKnight wherein McKnight admitted to lying to the police. Defendant never confessed to McKnight about his involvement in De La Rosa's murder. McKnight heard about the murder in the news and fabricated a story hoping to get a reduction of his sentence.

¶ 16        The circuit court dismissed defendant's petition at the first stage finding it frivolous and patently without merit. Defendant appealed.

4

¶ 17                          II. ANALYSIS

¶ 18       Defendant argues that the circuit court erred in dismissing his postconviction petition because it made an arguable claim of actual innocence. Specifically, Holcomb and Spiller's affidavits are new, material, noncumulative evidence that clearly and convincingly demonstrate that a trial would probably result in acquittal.

¶ 19       The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) sets out a three-stage proceeding in which a criminal defendant may assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A reviewing court reviews *de novo* whether the circuit court erred in dismissing defendant's first-stage postconviction petition. *Id.* At the first stage, a petitioner need only allege enough facts to make an arguable constitutional claim. *Id.* at 16-17, 21. Additionally, all well-pleaded facts are to be taken as true unless positively rebutted by the record. *Hodges*, 234 Ill. 2d at 16; *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). A petitioner raising an actual innocence claim after guilty plea proceedings must provide "new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *People v. Reed*, 2020 IL 124940, ¶ 49.

¶ 20       New evidence means the evidence was discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence. *Id.* The State concedes both affidavits are arguably new because they could not have been available at the time defendant entered his guilty plea and could not have been discovered sooner. We agree with the parties that the affidavits are arguably new.

5

¶ 21    Noncumulative evidence adds to the information that the fact finder heard during trial. *People v. White*, 2014 IL App (1st) 130007, ¶ 24. Holcomb's affidavit is arguably noncumulative evidence because there was no eyewitness testimony presented at trial. Spiller's affidavit is arguably noncumulative because no direct evidence was presented at trial that McKnight fabricated his story.

¶ 22    Material evidence is evidence that is relevant and probative of defendant's innocence. *Id.* Spiller and Holcomb's affidavits are arguably material as both significantly undermine the credibility of McKnight's testimony. Without McKnight's testimony, which essentially amounts to an admission of guilt by defendant, the State's case is entirely circumstantial. Spiller claims McKnight fabricated his testimony hoping to receive leniency on his own sentence. Holcomb alleges an alternative telling of the murder that conflicts with McKnight's testimony. Notably, Holcomb asserts that defendant was not even present during the murder. These affidavits, together and taken as true, reduce the State's case to one of entirely circumstantial evidence based solely on a theory of accountability.

¶ 23    Based on the low threshold for a petition to survive the first stage (*Hodges*, 234 Ill. 2d at 9), it is arguable that Holcomb and Spiller's affidavits, clearly and convincingly demonstrate that a new trial would probably result in acquittal. Accordingly, we reverse and remand for second-stage proceedings.

¶ 24                                        III. CONCLUSION

¶ 25    The judgment of the circuit court of Peoria County is reversed and remanded.

¶ 26    Reversed and remanded.