**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220010-U

Order filed August 3, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0010 Circuit No. 15-CF-149 |
| WILLIAM B. HORMAN, | ) ) ) | Honorable H. Chris Ryan Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The circuit court erred in dismissing defendant's postconviction petition. Reversed and remanded.

¶ 2    Defendant, William B. Horman, appeals the circuit court's first-stage dismissal of his postconviction petition, arguing he stated the gist of claims of actual innocence and ineffective assistance of counsel. We reverse and remand for second-stage proceedings.

¶ 3                                I. BACKGROUND

¶ 4        Defendant was charged with first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)) and concealment of a homicidal death (*id.* § 9-3.4(a)). Defendant worked for the victim, Robert Dowd Jr., at Rob's Washouts (Washouts) in Ottawa. Dowd was the owner of Washouts and went missing around April 14, 2015.

¶ 5        At the outset, we note that the facts of this case were previously set forth in detail in defendant's previous two appeals (*People v. Horman*, 2018 IL App (3d) 160423; *People v. Horman*, 2021 IL App (3d) 190382-U). We have relied on these previous cases, in conjunction with the record, in summarizing the facts relevant to this appeal.

¶ 6        At defendant's jury trial, the State introduced evidence that Dowd's friends were unable to locate him on April 15 and 16, 2015, but saw a smoldering fire in a burn pile at Dowd's trailer (where defendant occasionally stayed) and later saw defendant and Jonathan Beckman cleaning up the property. Numerous witnesses testified defendant was angry at Dowd for not making him a partner in Washouts and repeatedly stated he wanted to hurt or kill Dowd.

¶ 7        Blood was recovered at Washouts, which was determined to be Dowd's. Bone fragments were found in the burn pile and in the Fox River, which an expert determined were from the same adult individual. No DNA could be obtained from the bone fragments in the burn pile, and a DNA test of the bones recovered from the Fox River did not match Dowd. The State's expert believed it did not match because of a contaminant.

¶ 8        Beckman reached a deal with the State in which he would plead guilty to concealment of a homicidal death and testify against defendant in exchange for the dismissal of the murder charge against him and a sentence of five years' imprisonment, of which he would only have to serve 50%. Before testifying, Beckman reviewed his prospective testimony and transcripts of statements he had made to law enforcement. Beckman further acknowledged his initial statements contained

numerous lies and admitted to making several statements that were inconsistent with his trial testimony. He testified defendant called him after 9 p.m. on April 14 and stated he was upset with Dowd. Defendant picked up Beckman and said he was going to kill Dowd. They went to Washouts and saw Dowd asleep on a cot in his office. Defendant told Beckman to kill Dowd with a wooden club, but Beckman refused. Defendant then went into the office. Beckman heard 10 to 15 thuds but did not look into the office. Beckman helped put a tarp over Dowd's body, and defendant loaded him into the truck. Defendant dragged Dowd's body onto a burn pile and lit it on fire. After the body was burned, Beckman acted as a lookout as defendant threw the remains into the Fox River. Beckman later helped defendant get rid of Dowd's Ford Bronco.

¶ 9        Defendant testified he was not a partner in Washouts but believed he would be. Defendant stated he did make statements about wanting to harm Dowd but would never actually do so. On April 13, 2015, defendant was with Dowd until approximately 2:30 or 3 p.m. before returning to his apartment. The following day, April 14, Barbara Higgins called defendant to fix a broken water heater, and he arrived at her house around 11 a.m. or noon. Defendant slept at her house. On April 15, defendant left Higgins's home at 9:30 or 10 p.m. to purchase a car with Beckman. Defendant drove his truck and Beckman drove Dowd's Bronco, which Beckman stated he was going to have detailed. They left the Bronco in Harvey, Illinois, and returned to Higgins's home at approximately 1:30 or 2 a.m. The next day, April 16, defendant offered to let Beckman borrow his lawnmower if he would help clean up the yard around Dowd's trailer. They went to the trailer shortly before noon on April 16. A fire was already smoldering in the yard. They cleaned up the yard and burned the yard waste.

¶ 10        The jury found defendant guilty of all charges, and the court sentenced him to 35 years' imprisonment. On direct appeal, defendant claimed his counsel was ineffective for failing to move

3

to dismiss the charges under the speedy trial statute and the court failed to conduct a preliminary *Krankel* hearing. *Horman*, 2018 IL App (3d) 160423. We affirmed defendant's convictions and remanded for a *Krankel* inquiry. *Id.* ¶ 33.

¶ 11　　　　At the July 3, 2019, *Krankel* inquiry, defendant presented an affidavit from Cody Smith, dated June 3, 2019, unrelated to the subject of the *Krankel* inquiry. At the hearing, defendant explained he obtained the affidavit from Smith who had approached him at the Menard Correctional Center:

>"When [Smith] said what are you doing here at Menard when you should be home? I said what do you mean? Well, *** Beckman came to [Smith] and was telling [him] he got the sweet deal, this, that and the other, and I was like whoa, whoa, whoa, whoa. Write this all down in your words and get it approved by the State's— the notary at Menard's law."

In the affidavit, Smith alleged he was at La Salle County jail with Beckman, who

>"was bragging to anyone who would listen[ ] that a murder charge was being dropped, and he would receive a sweet deal of 5 years [at] 50% if he testified against [defendant]. The State had no evidence against [defendant]. So they needed Beckman's testimony that the State wrote for him ***. *** Beckman is lying for the State to get out of somethings he might or might not have done. *** Beckman told [Smith, defendant] was not guilty. The police scared him into lying ***."

The court did not consider the affidavit since it was not relevant to the *Krankel* inquiry. The court declined to appoint counsel and denied defendant's motion. Defendant appealed and this court upheld the circuit court's dismissal. *Horman*, 2021 IL App (3d) 190382-U, ¶ 24.

4

¶ 12        Defendant then filed a *pro se* postconviction petition on October 14, 2021, which is the subject of this appeal. In the petition defendant alleged he was innocent of the charged crimes based on the newly discovered affidavit from Smith and that his counsel was ineffective for failing to introduce phone records contradicting parts of Beckman's testimony. Defendant attached Smith's affidavit to his petition. The circuit court summarily dismissed defendant's petition, and this appeal followed.

¶ 13                                        II. ANALYSIS

¶ 14        On appeal, defendant argues the circuit court erred in dismissing his postconviction petition as he stated the gist of constitutional claims of actual innocence and ineffective assistance of counsel. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a process for a criminal defendant to assert his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage, defendant need only state the "gist" of a constitutional claim. *Id.* This standard presents a low threshold, requiring only that defendant plead sufficient facts to assert an arguably constitutional claim. *People v. Jones*, 211 Ill. 2d 140, 144 (2004). The circuit court may summarily dismiss the petition at the first stage of proceedings if it is frivolous or patently without merit, such that it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 12.

¶ 15        "[W]hile a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated. *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008). "All well-pleaded facts must be taken as true unless 'positively rebutted' by the trial record." *People v. Brown*, 236 Ill. 2d 175, 189 (2010) (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). The reviewing court must draw all reasonable inferences in favor of

advancing the petition. *People v. Knight*, 405 Ill. App. 3d 461, 471 (2010). We review *de novo* the circuit court's first-stage summary dismissal of a postconviction petition. *Hodges*, 234 Ill. 2d at 9.

¶ 16　　　　The due process clause of the Illinois Constitution forbids punishing a defendant for a crime where evidence newly discovered after trial shows that defendant is actually innocent of the crime. *People v. Washington*, 171 Ill. 2d 475, 487-88 (1996). Such a claim is established by supporting evidence that is "(1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47. To survive first-stage dismissal, a petition must present evidence that arguably meets each of these three factors. *People v. Coleman*, 2013 IL 113307, ¶ 96.

¶ 17　　　　First, the evidence contained in Smith's affidavit is arguably newly discovered. "Newly discovered evidence is evidence that could not have been obtained earlier through due diligence." *People v. Fields*, 2020 IL App (1st) 151735, ¶ 46. Smith's affidavit was dated June 3, 2019, which was over three years after the trial ended. "The dating indicates that the information contained in the affidavits was generally undiscoverable until after the trial had concluded ***." *People v. House*, 2020 IL App (3d) 170655, ¶ 30. Moreover, Smith was not a witness to the crime, and there was no way for defendant or counsel to know about his existence at the time of trial. Smith's testimony, therefore, could not have been discovered earlier. The only reason the evidence was ultimately discovered was due to a chance encounter between defendant and Smith at Menard Correctional Center. Further, while defendant had attempted to bring the affidavit to the court's attention during his *Krankel* inquiry, the court declined to address the affidavit, noting it was obtained after the matter had been resolved. Taking the allegations in the affidavit and petition as true, defendant has shown the evidence was arguably newly discovered.

6

¶ 18 Second, the evidence here is arguably material and noncumulative. "Evidence is material if it is relevant and probative of the petitioner's innocence"; it is noncumulative if it "adds to the information that the fact finder heard at trial." *Robinson*, 2020 IL 123849, ¶ 47. Smith's affidavit is arguably material. Beckman was a major witness at trial and testified at length against defendant, outlining the murder, how they disposed of the body, and their actions after disposing of the body. The only people that knew exactly what happened to Dowd were defendant and Beckman so both their testimonies and inconsistencies were important to the case. The affidavit alleged Beckman not only exaggerated defendant's role in the murder, but defendant was actually innocent of the murder. Further, the evidence is arguably noncumulative. The jury heard evidence that Beckman received a lenient and favorable deal from the State and could make the reasonable inference he had an incentive to downplay his own role in the murder. However, no evidence was presented that Beckman completely fabricated his testimony at the State's request and admitted defendant was not guilty, which Smith's testimony would provide.

¶ 19 Finally, the new evidence is arguably of such conclusive character that it would change the result on retrial, even if the "evidentiary balance weighed heavily in the State's favor at defendant's trial." *People v. White*, 2014 IL App (1st) 130007, ¶ 26. Besides Beckman's testimony, the State presented evidence defendant wanted to kill the victim, was at the trailer with a smoldering fire the day after the murder was believed to have occurred, and he and Beckman drove Dowd's Bronco shortly thereafter. However, Beckman's testimony was unquestionably a key part of the State's case since it was the only testimony presented at trial that defendant was present at the time of Dowd's death. In his defense, defendant testified at length regarding his activities from April 13 to 16, 2015, and provided an alternative, exonerating explanation for why he was driving the Bronco, why he was at the trailer with a smoldering fire, and where he was at the time of the

7

murder. Given the conflict in testimony and the nature of the affidavit, we believe the petition has surpassed the low bar at this stage of the proceedings. *People v. Harmon*, 2013 IL App (2d) 120439, ¶ 22 ("The trial court is not allowed to engage in any fact finding or credibility determinations at this stage ***."); *White*, 2014 IL App (1st) 130007, ¶ 29 (petition withstood first-stage scrutiny where a single affiant stated he lied at trial when he said defendant was the shooter and that he was with defendant at the time of the shooting even though "multiple witnesses testified that defendant was the shooter").

¶ 20        Because defendant stated the gist of an actual-innocence claim, we remand his full petition for second-stage postconviction proceedings. See *Hodges*, 234 Ill. 2d at 23. We need not consider defendant's ineffective assistance of counsel claim as partial summary dismissals are not permitted at the first stage of postconviction proceedings. See *People v. Rivera*, 198 Ill. 2d 364, 374 (2001); *White*, 2014 IL App (1st) 130007, ¶ 33.

¶ 21                                          III. CONCLUSION

¶ 22        For the reasons stated, we reverse and remand the judgment of the circuit court of La Salle County.

¶ 23        Reversed and remanded.